Tracy NIX *v.* WILSON WORLD HOTEL

CA 93-797                                          879 S.W.2d 457

Court of Appeals of Arkansas
En Banc
Opinion delivered July 6, 1994

304

*Baim, Gunti, Mouser, DeSimone & Robinson*, by: *William Kirby Mouser*, for appellant.

*Friday, Eldredge & Clark*, by: *J. Michael Pickens*, for appellee.

JUDITH ROGERS, Judge. This is an appeal from the Workers' Compensation Commission's decision finding that appellant failed to prove by a preponderance of the evidence that the surgery which was performed on her knee was causally related to her compensable injury or that she was entitled to additional temporary total disability benefits through September 19, 1991. On appeal, appellant contends that there is no substantial evidence to support the Commission's decision. We disagree and affirm.

Appellant was employed by appellee as an auditor. She suffered a compensable injury to her knee on April 11, 1990, when she attempted to jump over a puddle at appellee's hotel. Appellee accepted the claim as compensable and paid temporary total disability benefits through July 20, 1990. Appellant filed a claim contending she was entitled to additional benefits for temporary

total disability. The administrative law judge agreed and awarded additional benefits for temporary total disability benefits through a date yet to be determined. The Commission reversed, finding that appellant was not entitled to temporary total disability benefits through a date yet to be determined. The Commission remanded the case back to the ALJ for a determination of when appellant's healing period had ended.

Before the ALJ heard the case on remand, appellant received additional medical treatment and underwent surgery on her knee. On remand, the ALJ found that appellant was entitled to temporary total disability benefits from the date of her injury through September 19, 1991. The ALJ also found that appellee was responsible for medical treatment provided to appellant, including the surgery on her knee. The Commission reversed, finding that appellant was only entitled to temporary total disability benefits through August 30, 1990. The Commission also found that the surgery performed on appellant's knee was not causally related to her compensable injury.

■ Where the Commission's denial of relief is based on the claimant's failure to prove entitlement by a preponderance of the evidence, the substantial evidence standard of review requires us to affirm if the Commission's opinion displays a substantial basis for the denial of relief. *Moser* v. *Arkansas Lime Co.*, 40 Ark. App. 108, 842 S.W.2d 456 (1992). The issue is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Cagle Fabricating & Steel, Inc.* v. *Patterson*, 42 Ark. App. 168, 856 S.W.2d 30 (1993).

Appellant argues that she remained in her healing period after August 30, 1990, because she had not reached her maximum healing and had been released to work with restrictions established for her by her treating physicians; therefore she contends that she is entitled to temporary total disability benefits until September of 1991.

■■ Temporary disability is that period within the healing period in which an employee suffers a total or partial incapacity to earn wages. The healing period is defined as that period

for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. The determination of when the healing period ends is a factual determination to be made by the Commission. *Thurman* v. *Clarke Indus., Inc.*, 45 Ark. App. 87, 872 S.W.2d 418 (1994). The Commission also has the duty of weighing the medical evidence as it does any other evidence, and resolving any conflict is a question of fact for the Commission. *Chamberlain Group* v. *Rios*, 45 Ark. App. 144, 871 S.W.2d 595 (1994).

■ The record reflects that on August 29, 1990, Dr. Banks Blackwell found that appellant's knee had no effusion, and had full range of motion. He released appellant to return to work on August 30, 1990, with the use of one crutch. On October 10, 1990, Dr. Blackwell expressed the belief that appellant's primary problem was depression. The dissent points out that in that report Dr. Blackwell also opined that appellant had not reached her maximum healing because she will improve with "some type of gainful employment, weight reduction and counseling." According to Dr. James S. Mulhollan, Dr. Blackwell felt that the healing of appellant's knee had occurred, but he thought her subjective feelings and subjective symptoms would improve if she were able to work, lose weight and receive counseling. Dr. Blackwell also noted that appellant had an anterior cruciate ligament deficiency from an old injury and that weight loss was absolutely necessary. Dr. Blackwell's notes indicate that appellant was approximately fifty pounds overweight. Dr. Blackwell did not have any other recommendations for appellant's compensable injury other than pain abatement. The record also indicates that in October 1990 Dr. Blackwell could find no justification for assigning a rating for a permanent physical impairment for appellant as a result of her compensable injury.

In Dr. Mulhollan's letter dated July 17, 1990, he indicated that Dr. Blackwell had reported that appellant had a contusion on her knee. Dr. Mulhollan believed that appellant could return to work and that her injury on the job did not do any structural damage to her knee. In fact, Dr. Mulhollan opined that the compensable injury had simply caused her to undergo an "inhibition

of muscle function". He noted that appellant may have to use crutches, and if that were the case, she would probably need a back pack to carry items around the work place. According to Dr. Mulhollan, the use of the crutches would help appellant utilize a normal gait. He also believed that the use of the crutch prescribed by Dr. Blackwell could have been for the patient's peace of mind because it would make her less likely to fall. As of July 17, 1990, Dr. Mulhollan found that appellant did not have any impairment as a result of her compensable injury.

Appellant testified that Dr. Blackwell allowed her to use crutches for her peace of mind. She also stated that she had been performing odd jobs, such as babysitting, since she had been released by Dr. Blackwell on August 30, 1990. The dissent notes that appellant was not allowed to go back to work under the conditions mandated by Dr. Blackwell and that this was admitted. We note that the record does not contain any admission by appellee that appellant was not allowed to return to work. Appellant testified that she was not allowed to return to work and this was not controverted by any other evidence in the record. However, it is well settled that a party's testimony is never considered uncontroverted. *Lambert* v. *Gerber Products Co.*, 14 Ark. App. 88, 684 S.W.2d 842 (1985).

The Commission concluded that appellant had failed to meet her burden of proving that she remained within her healing period subsequent to August 30, 1990, because nothing further in the way of treatment would improve her condition. The Commission is the finder of fact and it did not accept the subjective feelings of pain by appellant and her doctor's acquiescence to these complaints as evidence that appellant's healing period had not ended on August 30, 1990. The Commission found that Dr. Blackwell released appellant to return to work on August 30, 1990, and that Dr. Blackwell found that appellant suffered no permanent disability as a result of her compensable injury. The Commission also relied on Dr. Mulhollan's opinion that appellant had no permanent disability as a result of her compensable injury. We cannot say that there is no substantial basis for the Commission's finding.

Appellant also challenges the Commission's finding that there was insufficient credible evidence of record proving that the

treatment subsequent to August 30, 1990, including surgery, was causally related to appellant's original compensable injury.

The record reflects that appellant's treatment and surgery subsequent to August 30, 1990, was for instability in her knee. Dr. Blackwell and Dr. Mulhollan's records indicate that appellant's knee showed very little instability after her compensable injury. More specifically, Dr. Mulhollan reported that appellant had a mild level of instability. He believed the instability was due to the ligament injury that appellant had sustained in 1980. Dr. Mulhollan said that appellant's knee had been unstable for eleven years and the appellant's work-related accident did not have any effect on that pre-existing instability. The record further indicates that surgery performed by Dr. Kenneth Martin was to correct appellant's pre-injury knee problem back in 1980-81.

■ The Commission found that there was insufficient credible evidence proving that the appellant's knee instability and subsequent surgery was causally related to appellant's compensable injury. The Commission stated that the medical records from Dr. Mulhollan and Dr. Blackwell immediately after the appellant's compensable injury showed that there was very little instability in the appellant's knee. According to the Commission, it was not until much later that appellant suffered from a significant amount of instability that surgery was performed by Dr. Martin. Therefore, the Commission concluded that appellee was not liable for the medical treatment provided after August 30, 1990. After reviewing the record, we cannot say that there is no substantial basis for the Commission's denial of medical benefits.

Affirmed.

ROBBINS, COOPER and MAYFIELD, JJ., dissent.

JAMES R. COOPER, Judge, dissenting. I agree with Judge Mayfield's dissent, and write separately only to emphasize that my disagreement with the majority is based on the absence of substantial evidence to show that the appellant's healing period had ended.

As the majority notes, the determination of when the healing period ends is a fact question for the Commission to make by weighing the evidence and resolving any conflicts therein.

*Thurman* v. *Clarke Industries, Inc.*, 45 Ark. App. 87, 872 S.W.2d 418 (1994). Nevertheless, the Commission's authority to weigh the evidence, medical or otherwise, does not permit it to arbitrarily disregard the testimony of any witness. *Reeder* v. *Rheem Mfg. Co.*, 38 Ark. App. 248, 832 S.W.2d 505 (1992). It is clear to me that the Commission arbitrarily disregarded Dr. Blackwell's statements to the effect that the appellant had not yet reached maximum healing. On this basis, I conclude that the Commission's opinion is not supported by substantial evidence.

MELVIN MAYFIELD, Judge, dissenting. I cannot agree with the result reached by the majority opinion in this case. I agree there is substantial evidence to support the Commission's decision that Dr. Martin's surgery in May of 1991 was not related to the April 1990 compensable injury. However, I do not agree that there is substantial evidence to support the Commission's decision that appellant's temporary total disability from the April 1990 injury ended on August 30, 1990.

Dr. Blackwell's record of April 18, 1990, states that appellant was injured while working on April 11, 1990, and that the emergency room doctor had recommended non-weight bearing crutches. On May 30, 1990, Dr. Blackwell recorded that appellant had been given a no-work slip on May 18, 1990. He reported on June 20, 1990, that appellant's knee was improving, but, "I feel it would be unsafe for her to attempt returning to work at this time." On July 18, 1990, he recorded that appellant was not strong enough to return to work and recommended that she continue Clinoril, Prozac and Amitriptyline and continue working out on a knee machine and exercise at home. And on August 29, 1990, he recorded that appellant was returned to full duty status on August 30, 1990, but *"must use one crutch."* (Emphasis added.) Dr. Blackwell did not testify in this case, but his office record dated August 29, 1990, stated that he also recommended that she avoid squatting, lifting more than twenty-five pounds, and working overhead. He said that he thought she would initially have weakness and difficulty standing for eight hours but standing and working should increase her strength.

We would not have any problem with the end of the period of temporary total disability benefits, except that the appellee would not let appellant go back to work under the conditions

mandated by Dr. Blackwell. This is admitted, and Dr. Blackwell's office note of September 12, 1990, states that it is regrettable that she was not allowed to return to work as this was a very important part of her rehabilitation which would now be more difficult. Then, Dr. Blackwell's office note of October 10, 1990, states, "I do not feel she has reached her maximum healing as she will improve with returning to some type of gainful employment, weight reduction and counseling."

The record also contains a deposition and some reports from Dr. James S. Mulhollan, an orthopaedic surgeon who examined appellant only one time. In a report dated July 17, 1990, he stated:

> I reviewed the patient's job requirements and it would appear to me there is no reason why she could not return to work even at this or at some very quick date. *She may have to use crutches and if that is the case, she will probably need a backpack to carry items around the workplace.* At home, she might try *using a walker with a basket.* She should wear an immobilizer at night, learn how to do terminal muscle sets, use a 3:1 gate pattern and swim since that would encourage muscle activity. As soon as she is able she should begin stationary bicycling[.] It is my projection that if she will do this program she will very quickly improve and get back to her pre-injury status.

(Emphasis added.)

I do not see how the majority can say that appellant has reached her maximum healing from her work-related injury when she will have to be on crutches and wear a backpack to carry books and supplies around the workplace, put on an immobilizer at night, and take extensive exercise and physical therapy. Moreover, in the final paragraph of the Commission's opinion it is stated that "we find that claimant was entitled to temporary total disability through August 30, 1990, the date Dr. Blackwell released her to return to full duty." As I have pointed out, Dr. Blackwell's report of August 29, 1990, states she was returned "to full duty *status* on August 30, 1990." (Emphasis added.) However, he said she "must use one crutch" and recommended that she avoid squatting, lifting more than twenty-five pounds, and working overhead. That is not a release "to return to full duty" and the Com-

mission's statement is simply not supported by the record. Furthermore, Dr. Blackwell's office note of October 10, 1990, as I have quoted above says, "I do not feel she has reached her maximum healing . . . ."

Therefore, I cannot agree that the Commission's decision finding appellant's temporary total disability ended on August 30, 1990, is supported by substantial evidence. I would reverse and remand on this point.

ROBBINS and COOPER, JJ., agree.