Connie ROBERSON *v.* WASTE MANAGEMENT

CA 96-1401 944 S.W.2d 858

Court of Appeals of Arkansas
Division II
Opinion delivered June 4, 1997

*Denver L. Thornton,* for appellant.

*Wright, Lindsey & Jennings,* by: *Lee J. Muldrow* and *Kristi M. Moody,* for appellee.

JOHN F. STROUD, JR., Judge. Connie Roberson worked as a truck driver for Waste Management. She suffered a compensable injury to her right knee on April 13, 1994, when she lost her footing while opening the truck door and grabbing a chain to keep from falling into the ruts below. She underwent arthroscopic surgery the next month by Dr. W. J. Giller, and she began a weight loss program under the care of a dietician. She weighed 296 pounds at the time of the injury.

At a hearing in November 1995, the administrative law judge found that the claimant had proven that she remained within her healing period, that she was entitled to temporary total disability benefits for the periods she had not worked after the injury, and that she was entitled to reasonable and related medical benefits for treatment by Dr. Giller. The Workers' Compensation Commission reversed the decision of the ALJ, finding that the claimant had failed to prove that she remained within her healing period beyond August 1994, that she was entitled to additional temporary total disability benefits, or that she was entitled to an osteotomy surgical procedure by Dr. Giller. Ms. Roberson contends on

appeal that the Commission's denial of additional temporary total disability benefits and denial of reasonable and related medical treatment is not supported by substantial evidence. We disagree and affirm.

When the Commission denies a claim because of the claimant's failure to meet her burden of proof, the substantial-evidence standard of review requires that we affirm the Commission's decision if its opinion displays a substantial basis for the denial of relief. *Jordan v. Tyson Foods, Inc.*, 51 Ark. App. 100, 911 S.W.2d 593 (1995). Substantial evidence is that relevant evidence which reasonable minds might accept as adequate to support a conclusion. *Harvest Foods v. Washam*, 52 Ark. App. 72, 914 S.W.2d 776 (1996).

Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages. *J.A. Riggs Tractor Co. v. Etzkorn*, 30 Ark. App. 200, 785 S.W.2d 51 (1990). The healing period is that period for healing of the injury which continues until the employee is as far restored as the permanent character of the injury will permit. If the underlying condition causing the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. *Nix v. Wilson World Hotel*, 46 Ark. App. 303, 879 S.W.2d 457 (1994). The Commission has the duty of weighing the medical evidence as it does any other evidence, *id.*, and its resolution of the medical evidence has the force and effect of a jury verdict. *McClain v. Texaco, Inc.*, 29 Ark. App. 218, 780 S.W.2d 34 (1989).

The evidence at the hearing included letters and medical records of appellant's primary treating physician, Dr.Giller; an independent medical evaluation by Dr. John Slater; and appellant's own testimony. Both doctors are orthopedic surgeons.

The day after Dr. Giller performed arthroscopic surgery on May 23, 1994, he wrote, "It is evident that the patient is going to have continuing difficulties with her knee. It is an absolute must that she lose weight to a more normal range." At the end of May he released appellant to light-duty work with the restrictions that she could not stand or walk for prolonged periods of time and that

she sit with her leg propped up. He wrote in June 1994 that appellant should continue on limited duty at work. In August 1994 he stated, "She will continue with her physical therapy . . . and she will also continue on her diet. She was told that she could return to work so long as she was not required to stand or walk." Finally, on November 30, 1994, Dr. Giller wrote:

> Since the patient was last seen she has lost approximately 70 pounds on the New Directions Weight Loss Program. She tells me that she is still having discomfort in the knee and she has not been working.
>
> . . . .
>
> It is still my recommendation that the patient needs to be scheduled for a tibial osteotomy. . . . In the meantime, she will continue with her weight loss program. . . . She was told that she could work as long as she adhered to the restrictions that have been outlined previously.

Dr. John Slater's report of the independent medical examination on February 28, 1995, included the following: "In reviewing the record, I would ascertain that she reached maximum medical improvement three months after her arthroscopic surgery." He stated that his findings did not suggest a need for surgery, and he recommended that appellant continue with her weight loss. At the hearing, Ms. Roberson testified that she was twenty-six years old and was five feet, six inches tall. She stated that she had weighed 296 pounds at the time of her injury and further testified:

> I now weigh 125 pounds. I had to lose weight because of my knee injury. I needed another surgery and they wanted me to lose the weight so that I could heal better from the surgery. The second surgery has not been done yet. Dr. Giller was going to do a second surgery on my knee when I lost the weight. I've lost the weight.

Appellant relies upon Dr. Giller's statements and her own testimony to support her argument that she is still within her healing period and that she needs additional surgery. When reviewing decisions from the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the findings of the Com-

mission and uphold those findings if they are supported by substantial evidence. *Torrey v. City of Fort Smith*, 55 Ark. App. 226, 934 S.W.2d 237 (1996). The issue is not whether this court might have reached a different result from that reached by the Commission or whether the evidence would have supported a contrary finding; if reasonable minds could reach the result in the Commission's decision, we must affirm. *Harvest Foods v. Washam, supra.*

The Commission based its decision that appellant's healing period ended in August 1994 upon Dr. Slater's opinion that the healing period had ended three months after surgery. The Commission also found that appellant had not proven that she suffered a total incapacity to earn wages. This finding was based upon her testimony that although she would return to work if she could find a job where she could sit with her leg elevated and where she could get up and move around, she had not looked for work. The Commission's finding that appellant had failed to prove entitlement to additional temporary total disability benefits was based upon Dr. Slater's independent medical evaluation and the fact that the claimant's condition improved after she lost weight.

We hold that Dr. Slater's findings, as reported in the independent medical evaluation, support the Commission's findings that appellant's healing period ended in August 1994 and that the osteotomy surgery is not reasonable and necessary treatment for her compensable injury.

Affirmed.

ROGERS, J., agrees. CRABTREE, J., concurs.

TERRY CRABTREE, Judge, concurring. The accompanying majority opinion sufficiently states the facts surrounding this case, and I agree in substance with the majority opinion's application of the existing law. However, I think it is worth emphasizing the following excerpt from the appellant's abstract of the administrative law judge's decision:

> After observing the demeanor of the claimant as a witness, I found her testimony concerning the symptoms she was experiencing with her knee to be credible. I find that her dramatic

weight loss under the directions of Dr. Geller indicates that she is cooperating in her medical treatment and has sincere desire to return to a working status.

We have often said that the credibility of witnesses and the weight to be given their testimony are matters solely within the province of the Commission. *See, e.g., Whaley v. Hardee's,* 51 Ark. App. 166, 912 S.W.2d 14 (1995); *Maxwell v. Carl Bierbaum, Inc.,* 48 Ark. App. 159, 893 S.W.2d 346 (1995); *Bartlett v. Mead Containerboard,* 47 Ark. App. 181, 888 S.W.2d 314 (1994). Further, when the Commission issues an opinion of its own, we give no weight to the ALJ's opinion. *Jane Traylor, Inc. v. Cooksey,* 31 Ark. App. 245, 792 S.W.2d 351 (1990).

Here, the medical evidence, in the form of Dr. Slater's findings, supports the Commission's decision. However, it is troubling that Dr. Slater, a physician selected by the appellee, apparently spent less than ten minutes with appellant. Further, the ALJ specifically assessed appellant's credibility — favorably — and the Commission ignored this determination in favor of the single report from the company doctor disputing all of appellant's well-documented claims.

Based on the current state of the law, this case must be affirmed. However, it illustrates vividly the legal fiction the Commission engages in when it purports to rule on the credibility of witnesses on a cold record while rejecting the face-to-face determination of the ALJ. This is counterintuitive and contrary to the traditional logic behind appellate courts' deference to the trier of fact on issues of credibility. In the present case, the court must defer to a Commission, a politically appointed body of two distinct interest groups with a chairman who always casts the swing vote, that typically sees no witnesses, hears no live testimony, and is limited to the same cold record as the court. Such deference, though clearly the state of the law, is ill-advised and contrary to the wisdom supporting the deference this court typically gives in other areas of the law to trial judges and juries — the only ones

throughout the process who have the opportunity to look witnesses in the eye and discern their credibility.