POULAN WEED EATER *v.* Loretta MARSHALL

CA 01-1301 84 S.W.3d 878

Court of Appeals of Arkansas
Divisions I,II and III
Opinion delivered September 18, 2002

130

*McMillan, Turner, McCorkle & Curry, LLP*, by: *Ed McCorkle*, for appellant.

*Dowd, Harrelson, Moore & Giles*, by: *Greg Giles*, for appellee.

KAREN R. BAKER, Judge. The appellant, Poulan Weed Eater, appeals from a decision by the Arkansas Workers' Compensation Commission awarding appellee, Loretta Marshall, temporary total disability benefits and additional medical treatment after an admittedly compensable injury. Appellant contends that the Commission's finding in support of its decision that additional medical treatment is reasonable and necessary and related to appellee's compensable injury was not supported by substantial evidence. It also claims that the Commission's decision that appellee is entitled to temporary total disability benefits from July 28, 2000, and continuing through a date yet to be determined is not supported by substantial evidence. We hold that substantial evidence supports the Commission's findings and affirm.

Appellee, Ms. Marshall, worked for appellant for over twelve years. During the last six to eight months of her employment, she began experiencing pain in both hands. She testified that on May 16, 2000, she developed additional symptoms in her left arm of tingling, limpness and a heavy feeling when she reached behind her with her left arm and picked up a tray of pistons. Ms. Marshall also testified that she reported these pains to her supervisor, Randy Welch, who then took her to the nurse's station. After she explained her symptoms to him and the nurse, they both went to inspect Ms. Marshall's job duties. Upon their return, the nurse advised Ms. Marshall that her job could not have caused her symptoms and instructed Ms. Marshall to see her family physician. Ms. Marshall then left work even though she had only been at work a few hours.

Mr. Welch testified that he had no independent recollection of Ms. Marshall's reporting of her hand and arm pains, but that he would routinely send a person to the nurse who reported such pains. The nurse testified that she had seen Ms. Marshall on that date, but that Ms. Marshall only had her blood pressure checked. The nurse had no recollection of seeing Ms. Marshall for hand and arm pain, nor did she recall going to evaluate Ms. Marshall's job duties.

Appellant's workers' compensation manager confirmed that Ms. Marshall only worked for an hour to an hour-and-a-half

before clocking out on May 16, 2000. This witness also confirmed that Ms. Marshall was not provided with a form N. In addition, medical records reflected that Ms. Marshall reported to the emergency room of the local hospital at 1:08 p.m. on May 16, 2000, with complaints of left arm pain and numbness that had started that day.

Ms. Marshall received several certificates for return to work dated as early as May 17, 2000. She was being treated throughout this time period. The last certificate was dated July 25, 2000, and released her back to work on July 26, 2000. The certificate indicated that Ms. Marshall had been under the care of the treating physician from July 25 to an unspecified date in the future. On July 28, 2000, appellant terminated Ms. Marshall's employment citing the reason as absenteeism and tardiness. Medical evidence was in conflict and included statements that if Ms. Marshall went back to the same line of work, it might make symptoms worse and recommended additional testing and consultation. In addition, her family physician stated that it was reasonable and necessary for Ms. Marshall to remain off work subsequent to July 28 until she could obtain appropriate medical care. The Commission found that Ms. Marshall had not returned to work.

Appellant stipulated that Ms. Marshall sustained a compensable injury; consequently, the majority of the testimony centered around the type of work that Ms. Marshall performed and whether she had reported an injury. The administrative law judge's opinion, adopted by the Commission, addressed the discrepancies in the testimony observing that the nurse did not testify from an independent memory, but from an incomplete nurse's log. The log did not reflect a reason for Ms. Marshall's visit, and the opinion noted that the nurse merely assumed that Ms. Marshall came in for a blood-pressure check. Specifically, the opinion stated that Ms. Marshall was credible and that her account was more accurate than that of Mr. Welch and the nurse.

This court reviews decisions of the Workers' Compensation Commission to see if they are supported by substantial evidence. *Deffenbaugh Indus. v. Angus*, 39 Ark. App. 24, 832 S.W.2d 869 (1992). In determining the sufficiency of the evi-

dence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The determination of the credibility and weight to be given a witness's testimony is within the sole province of the Commission. The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *Farmers Coop. v. Biles*, 77 Ark. App. 1, 4-5, 69 S.W.3d 899, 902 (2002). Further, the Commission has the authority to accept or reject medical opinions, and its resolution of the medical evidence has the force and effect of a jury verdict. *Estridge v. Waste Mgmt*, 343 Ark. 276, 33 S.W.3d 167 (2000).

 Here, in reaching its decision, the Commission specifically noted discrepancy in testimony of witnesses for appellant and appellee and found that appellee was credible and that her account of what transpired was more accurate than appellant's witnesses. Furthermore, medical records corroborated the account. The decision noted that medical diagnoses on the claim were in conflict, but that appellant had accepted the injury and that the claim was compensable. The decision also noted that while one doctor conducted tests which he interpreted as normal, another doctor indicated that going back to the same line of work might make appellee's symptoms worse. Still another had recommended additional testing. Ms. Marshall's treating physician's opinion was that it was reasonable for her to remain off work until proper testing and treatment had been done. From our review of the evidence, we conclude that substantial evidence supports the Commission's decision that additional medical treatment is necessary and related to Ms. Marshall's compensable injury.

We also hold that substantial evidence supports the Commission's finding that Ms. Marshall is entitled to temporary total disability benefits from July 28, 2000, and continuing to a date yet to be determined. Appellant argues that appellee's healing period

had ended because she had received a certificate to return to work, that she returned to work on July 26, and then was fired on July 28 for absenteeism and tardiness unrelated to her claim.[1]

Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages; the healing period is that period for healing of an accidental injury that continues until the employee is as far restored as the permanent character of his injury will permit, and that ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. *Carroll Gen. Hosp. v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id.* These are matters of weight and credibility, and thus lie within the exclusive province of the Commission. *Farmers Coop. v. Biles, supra.*

In this case, the determination of whether the healing period has ended included the factual determination as to whether Ms. Marshall had returned to work. Arkansas Code Annotated § 11-9-521(a) (Repl.1996), provides that employees who sustain scheduled injuries shall receive temporary disability benefits "during the healing period or until the employee returns to work, whichever occurs first." Appellant argues that, because Ms. Marshall was released to return to work after her injury and did so for two days, that she is barred from receiving temporary total disability benefits for the period following her termination by appellant. We do not agree.

The argument is analagous to that made in *Farmers Coop. v. Biles, supra,* where the employer argued that the employee's attempts to continue working constituted a return to work. We find the reasoning in *Biles* to be applicable in this case as well:

---

[1] The dissent footnotes that testimony indicated that Ms. Marshall returned to work at an earlier date; however, appellant does not argue that any previous attempt to return to work was successful.

[C]onstruction of the Workers' Compensation Act must be done in light of the express purpose of that legislation, which is "to pay timely temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force." Ark.Code Ann. § 11-9-101(b) (Repl. 1996). In light of the legislative purpose, it would be ludicrous to assume that the legislature sought to penalize workers who sustain scheduled injuries, or to deter such workers from making a good-faith effort to return to the work force following such an injury. Section 11-9-521(a)'s brief reference to temporary disability benefits merely establishes the right of a worker who has sustained a scheduled injury to such benefits, and was clearly not intended to bar additional temporary total disability benefits following an unsuccessful attempt to return to the workforce. See *Roberson v. Waste Management*, 58 Ark. App. 11, 944 S.W.2d 858 (1997).

"Return to work" is not defined by the Act, and we think it would be a gross perversion of the purpose of the Workers' Compensation Act to hold that appellee "returned to work" pursuant to § 11-9-521(a) by continuing to report to work following his injury. In our view, appellee never left work. Appellee could not leave work — without being terminated for absenteeism — until he had been evaluated by a physician and given an off-work slip. Appellee requested medical care and evaluation, but appellant refused to provide it. No reasonable construction of the term "return to work" would permit an employer to coerce an injured worker to abandon his claim to temporary disability benefits by denying him reasonable and necessary medical treatment for an admittedly compensable injury.

*Id.* at 6-7, 69 S.W. 3d at 903.

In this case, Ms. Marshall repeatedly attempted to work, and repeatedly required additional care and treatment. Specific medical evidence indicated that her continued treatment for the compensable injury was required past the date of her termination by appellant. Substantial evidence supports the Commission's finding that Ms. Marshall had not returned to work and accordingly, we affirm on that point as well.

Affirmed.

STROUD, C.J., BIRD, and VAUGHT, JJ., agree.

PITTMAN, J., concurs.

HART, ROBBINS, CRABTREE and ROAF, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. I agree with the majority that the Commission's award of additional medical benefits should be affirmed. However, I cannot agree that there is substantial evidence to support the Commission's decision to award temporary total disability benefits from July 28, 2000, through a date yet to be determined. Therefore, I must dissent.

In its opinion, the Commission found Ms. Marshall to have a scheduled injury, and thus she is entitled to TTD benefits if she remains in her healing period and has not returned to work, regardless of whether she is incapacitated from earning wages. *See Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). Neither party takes issue with the Commission's characterization of the injury as a scheduled one. The Commission further found that Ms. Marshall remains in her healing period and that she has not returned to work, thus entitling her to ongoing TTD benefits. There is substantial evidence that she remains in her healing period, but I cannot agree that there is any evidence to support the finding that she has not returned to work.

In her testimony, Ms. Marshall acknowledged that "I was off [work] from about May 16th or 17th through June 5th," and that "I went back to work about June 5th, and further that she continued to work until she was fired." As the majority opinion points out, her subsequent termination on July 28 was for absenteeism and tardiness unrelated to her claim.

In my view, the majority's reliance on *Farmers Coop. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002), is misplaced. In that case the claimant did not leave work after his compensable injury, but instead continued to work in spite of his pain and difficulties before being terminated for reasons related to the injury. In contrast, Ms. Marshall left work on May 17 and remained off work

through June 5, when she returned to work.[1] Inasmuch as her subsequent termination was for reasons unrelated to her injury, it cannot be said that she made an "unsuccessful attempt to return to the workforce" as contemplated by this court in *Farmers Coop. v. Biles, supra.*

I agree with appellant's argument that, because Ms. Marshall returned to work after her scheduled injury, she should be barred from receiving TTD benefits for the period following her termination. I respectfully dissent.

HART, CRABTREE, and ROAF, JJ., join in this dissent.

---

[1] Although the majority's opinion refers to the period during which Ms. Marshall returned to work as "two days," her testimony indicated that the actual period was almost eight weeks.