## Curtis BURRIS *v.* L & B MOVING STORAGE

CA 03-240                                          123 S.W.3d 123

Court of Appeals of Arkansas
Division I
Opinion delivered October 29, 2003

*Ronald L. Griggs*, for appellant.

*Bridges, Young, Matthews & Drake PLC*, by: *Michael J. Dennis*, for appellee.

Josephine Linker Hart, Judge. Appellant, Curtis Burris, appeals from a decision of the Workers' Compensation Commission denying his claim for permanent and total disability benefits and limiting the decrease in his wage-earning ability equal to a 20% permanent partial disability. Appellee, L & B Moving Storage, contends on cross-appeal that the Commission erred in awarding any wage-loss benefits, and further, that the Commission improperly disregarded a stipulation of facts agreed upon between the parties and consequently erred in awarding any benefits for a decrease in appellant's wage-earning ability over and above his 5% anatomical impairment rating. We affirm on direct appeal and on cross-appeal.

The parties stipulated, among other things, that appellee had accepted the claim as compensable and had paid to appellant a 5% permanent physical impairment rating in addition to an offer of vocational rehabilitation. Although the administrative law judge acknowledged that the parties had stipulated that appellee had offered vocational rehabilitation to appellant, he noted that the record was silent with regard to appellant's response to any offer of rehabilitation. Thus, the ALJ opined that "while it cannot be found that the claimant refused vocational rehabilitation, neither can it be found that the claimant participated with any such effort." The ALJ determined that appellant had sustained a decrease in his wage-earning ability equal to a 10% permanent partial disability in addition to a 5% physical impairment rating. The Commission, after conducting a *de novo* review of the entire record, found that appellant sustained a decrease in his wage-

earning ability equal to a 20% permanent partial disability, then affirmed and accepted the opinion of the ALJ as modified. From that decision comes this appeal.

In reviewing a decision of the Workers' Compensation Commission, this court views the evidence and all reasonable inferences in the light most favorable to the findings of the Commission. *Swift-Eckrich, Inc. v. Brock*, 63 Ark. App. 118, 975 S.W.2d 857 (1998). These findings will be affirmed if supported by substantial evidence. *Georgia-Pacific Corp. v. Carter*, 62 Ark. App. 162, 969 S.W.2d 677 (1998). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Wackenhut Corp. v. Jones*, 73 Ark. App. 158, 40 S.W.3d 333 (2001). On review of workers' compensation cases, the question is not whether the evidence would have supported findings contrary to the ones made by the Commission; rather, it is whether there is substantial evidence to support the Commission's decision even though we might have reached a different conclusion if we sat as the trier of fact. *See Privett v. Excel Specialty Prods.*, 76 Ark. App 527, 69 S.W.3d 445 (2002). The decision of the Commission must be affirmed if reasonable minds might have reached the same conclusion. *See Dallas County Hosp. v. Daniels*, 74 Ark. App. 177, 47 S.W.3d 283 (2001). The Commission may accept only those portions of testimony that it determines are worthy of belief. *Tucker v. Roberts-McNutt*, 342 Ark. 511, 29 S.W.3d 706 (2000).

At the time of the hearing, appellant was a fifty-four-year-old laborer who had worked primarily as a furniture hauler. Appellant testified that he had completed the eighth grade but had no further education or training. He noted that although he could write his name, he was unable to read or write very well. Appellant described his employment history as having worked for thirty-one years as a furniture packer and mover. He stated that he had maintained employment from the time he was nine years old until he was injured on November 14, 2000. Appellant testified that after the injury, his back hurt all of the time and that he was unable to lift anything.

Dr. Greg Smart saw appellant on several occasions beginning November 29, 2000, and reported that appellant suffered left-leg pain radiating from the left buttock down the back of the leg. After reviewing the result of an MRI, Dr. Smart recommended a bone

scan. In his report from January 10, 2001, he noted that appellant experienced "disc herniation to the left," which could possibly account for some of appellant's symptoms. He also noted that appellant had reported pain in his back as well as pain and numbness in his left leg. Dr. Smart's notes from May 11, 2001, state that "[l]ong-term, Mr. Burris will not be able to return to his prior regular duties and he will have long-term restrictions whether he has surgery or whether he does not have surgery."

Dr. Robert E. Germann's reports from January 16, 2001, and February 6, 2001, note that the MRI of appellant's back "revealed a herniated disk at [the] left L4-5 and small left herniated disk at [the] L5-S1 on the foramen" and that appellant failed on conservative treatment.

Dr. James R. Adametz reported on March 2, 2001, that appellant suffered a small disk abnormality and that it would be in appellant's best interest for him to obtain a light-duty job by trying vocational rehabilitation. On June 5, 2001, Dr. Adametz assigned appellant a permanent partial impairment rating of 5% to the body as a whole and recommended that he not lift anything over thirty pounds. Merlinda B. Reyes, P.T., opined on April 2, 2001, in a functional-capacity evaluation summary report that appellant could potentially be a "difficult rehabilitation candidate due to his lack of full physical effort and some degree of symptom magnification."

For reversal, appellant argues that substantial evidence does not support the Commission's denial of his claim for permanent and total disability. Instead, appellant asserts that he is totally and permanently disabled based on the medical testimony of his extensive injuries and his own testimony regarding his lack of employable skills and abilities. In support of this contention, appellant cites *Eckhardt v. Willis Shaw Express, Inc.*, 62 Ark. App. 224, 970 S.W.2d 316 (1998), for the proposition that the wage-loss factor is the extent to which a compensable injury has affected the claimant's ability to earn a livelihood, and that the Commission is charged with the duty of determining disability based upon a consideration of medical evidence, age, education, and work experience. As its point on cross-appeal, appellee also cites as error the Commission's award of a 20% wage-loss disability rating. Appellee argues that appellant is not entitled to any additional benefits because the evidence established appellant as merely a

benefit-seeker who not only exaggerated his physical symptoms but also failed to put forth his best efforts in a functional capacity evaluation.

The Commission, in its opinion, relied on the reports from Dr. Adametz in which he stated that appellant could perform light-duty work. Further, the Commission noted that the record indicated that appellant was "not motivated to resume employment [and] such a lack of motivation impedes our assessment of the claimant's loss of earning capacity." Despite these observations, the Commission, noting appellant's age, lack of education, work history, and no prior back injuries as well as his credible testimony that he wass not able to sit, stand, or bend without difficulty, found that appellant had sustained a decrease in his wage-earning ability equal to 20% in addition to his 5% anatomical impairment.

■ Viewing the evidence in the light most favorable to the Commission's decision, we hold that its decision displays a substantial basis to award appellant a decrease in his wage-earning ability equal to 20%. Appellant testified that he was fifty-four years of age at the time of the hearing, had completed an eighth grade education, and had worked since the age of nine years old. The medical testimony demonstrated that appellant injured his back and would not be able to return to his prior work duties as a result of the injury. However,. appellant sustained only a 5% permanent partial impairment rating, and the medical evidence did not preclude appellant from engaging in light-duty work. Even though appellant has only completed the eighth grade, and his testimony demonstrates his lack of written communication.skills, his proof falls far short of establishing, as a matter of law,that he suffers a total incapacity to earn wages.

■ On cross-appeal, appellee asserts two points. First, appellee argues that the Commission improperly disregarded a stipulation of facts agreed upon by the parties that appellee had offered vocational rehabilitation to appellant. Second, appellee argues that the Commission erred in awarding benefits over and above the percentage of physical impairment issued by appellant's treating physician. Our prior discussion in which we held there was substantial evidence to support the Commission's award of a decrease in wage-earning ability of 20% obviates the need for discussion of this second point.

While the Commission recognized the parties' stipulations, it noted in its opinion:

> Despite counsel's stipulation that the respondents had "offered vocational rehabilitation," there was no testimony indicating what sort of rehabilitation was offered the claimant. Nor was there any record of consultation with a vocational counselor or any other offer of vocational rehabilitation. In order to rely upon Ark. Code Ann. § 11-9-505(b)(3) in foreclosing the claimant's entitlement to permanent partial disability, the respondents must show that the claimant refused to participate in a program of vocational rehabilitation or job placement assistance, or, through some other affirmative action, indicated an unwillingness to cooperate in those endeavors. *Knight v. Andrews Transport*, Worker's Compensation Commission E408356 (April 17, 1998), citing *Newman v. Crestpark Retirement Inn*, Workers' Compensation Commission E418166 (Sept. 14, 1998). In the present matter, the respondents offered no evidence to show that the claimant refused to participate or was unwilling to cooperate in vocational rehabilitation. Therefore, the Full Commission affirms the Administrative Law Judge's finding that the claimant is not barred by Ark. Code Ann. § 505(b)(3) from pursuing wage-loss disability.

Appellee asserts that Ark. Code Ann. § 11-9-505(b)(3) (Repl. 2002) does not require that a specific program be offered to the one claiming benefits. Further, appellee argues that once the employer offers a claimant rehabilitation, the burden of proof shifts to the claimant to show cooperation or a reasonable basis for nonparticipation. In support of this argument, appellee claims that before any individualized program of rehabilitation can be developed "it is necessary for claimant to participate in an assessments and information gathering." Appellee argues that the evidence is clear that appellant neither participated in nor cooperated with a program nor did he present a reasonable cause why he could not participate in a program.

Appellant, on the other hand, contends that appellee presented no evidence concerning the type of employment which he might be able to perform in light of his limited physical abilities and no evidence of the availability of employment for someone with limited skills such as appellant. Appellant notes that the record is void of any evidence that appellee presented a specific program for rehabilitation or any evidence that appellant refused that program. Appellant asserts that the Commission was correct in

requiring the appellee to prove that claimant refused to participate in a vocational rehabilitation program or job placement assistance or that appellant indicated that he was unwilling to cooperate in those endeavors.

██ ██ Citing *Bishop v. Bishop*, 60 Ark. App. 164, 961 S.W.2d 770 (1998), appellee argues that the stipulation of the parties is binding on the Commission. *Bishop* stands for the proposition that when a stipulation dictated in open court covers all rights and liabilities of parties in total and complete agreement, it will have the full force and effect of a binding agreement, and it will not be modifiable. The case at bar differs from *Bishop* in that the stipulation does not establish all the rights and liabilities of the parties involved and thus does not, standing alone, fulfill the requirements set forth in Ark. Code Ann. § 11-9-505(b)(3). However, we do agree with the Commission that while the parties stipulated that an offer for vocational rehabilitation was made by appellee, there was no evidence that appellant refused vocational rehabilitation, refused to participate in any offered program, or waived participation in an offered program.

██ On appellate review, an administrative agency's interpretation of a statute and its own rules will not be overturned unless it is clearly wrong. *Byars Const. Co. v. Byars*, 72 Ark. App. 158, 165, 34 S.W.3d 797, 802 (2000). Arkansas Code Annotated section 11-9-505(b)(3) (Repl. 2002) states:

> The employee shall not be required to enter any program of vocational rehabilitation against his or her consent; however, no employee who waives rehabilitation or refuses to participate in or cooperate for reasonable cause with either an offered program of rehabilitation or job placement assistance shall be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment established by objective physical findings.

██ Therefore, we hold that there is substantial evidence to support the Commission's findings that appellee cannot rely on Ark. Code Ann. § 11-9-505(b)(3) and deprive appellant from receiving wage-loss benefits, because appellee did not show a refusal by appellant to participate in a program of vocational rehabilitation or job assistance or an indication of an unwillingness

to cooperate with an offered program. Thus, we also affirm on cross-appeal. Affirmed on direct-appeal and on cross-appeal.

PITTMAN and GRIFFEN, JJ., agree.