Louise MAXEY *v.* TYSON FOODS, INC.,
and Second Injury Fund

CA 98-1330 · 991 S.W.2d 624

Court of Appeals of Arkansas
Division III
Opinion delivered May 19, 1999

*Stephen M. Sharum*, for appellant.

*Bassett Law Firm*, by: *Earl Buddy Chadick*, for appellee Tyson Foods, Inc.

*David L. Pake*, for appellee Second Injury Fund.

S AM BIRD, Judge. Louise Maxey appeals a decision of the Workers' Compensation Commission holding that she was not permanently and totally disabled, but that she was entitled to benefits for a 35% wage-loss disability. The Second Injury Fund argues on cross-appeal that the Commission erred in awarding appellant wage-loss benefits on a scheduled injury. Appellee Tyson Foods takes the position that the Commission did not err in finding that appellant failed to prove permanent and total disability, but it does not address the Second Injury Fund's argument.

At the time of the hearing in 1997, appellant was sixty-eight years old, had a tenth-grade education, no vocational training, and her past work experience consisted of working on a farm, in a flower shop, as a sales clerk in a clothing store, and for appellee Tyson Foods. Appellant testified that she began working for Tyson in 1984 and performed various jobs. She had been on the "debone line pulling chicken tenders," a floor person cleaning up, assisting on the production line, and keeping load records. On January 27, 1989, appellant sustained a compensable injury to her lumbar spine, underwent two surgeries, and was left with a 12% physical impairment to the body as a whole.

When appellant was released to return to work after her back injury she was restricted from bending and lifting, and she was placed on the "shell line." She said a maintenance man made a stool especially for her so she could sit or stand as she needed. She also wore a back brace and took pain medication as needed. She said, in general, she did quite well that way.

In 1995, appellant developed bilateral carpal tunnel syndrome, and she has had two surgeries on each wrist. After the surgery on her right wrist, appellant developed an infection that has never completely healed. When appellant was released to return to work on May 14, 1997, with a 15% impairment to her hands, appellant was told by the plant manager that there was no job available within her restrictions, and she was terminated as of May 30, 1997.

Appellant testified that she then attempted to work as a Wal-Mart "greeter," but being on her feet all day and having to pull baskets for customers caused her severe pain and she had to quit.

She said she can no longer squeeze anything, open a jar, peel a potato, push a vacuum, lift any cookware, or clean her house. Her hands stay sore and hurt constantly. The administrative law judge found that appellant was permanently and totally disabled.

The Commission reversed, and reduced appellant's disability from total to 35%. It found that appellant had skills transferable to the "service sector" of employment where she had experience, and that there were numerous jobs where appellant's restrictions of sitting or standing as needed could be accommodated. The Commission dismissed appellant's unsuccessful attempt to work at Wal-Mart as insufficient to prove a total inability to earn meaningful wages.

On appeal, appellant argues that the Commission's analysis was flawed and that reasonable minds could not reach the decision that the Commission reached. She contends that the Commission failed to acknowledge that she attempted to return to her job at Tyson Foods but was told that her restrictions barred her from performing "even the most sedentary work available" at Tyson. The appellant challenges the Commission's implication that she was not motivated to return to work. She points out that she testified that she needed to continue working to meet her daily expenses; that she suggested to Tyson's manager a couple of jobs she thought she could perform but was rebuffed; that she attempted to work at Wal-Mart but was physically unable to do so; and that after her back surgery she returned to her work at Tyson and worked until she became unable to function because of bilateral carpal tunnel syndrome.

Appellant also submits that the medical evidence supports a finding that she is permanently and totally disabled. In support of this argument, she points to the records of Dr. E.F. Still. Dr. Still's report of April 4, 1997, stated that appellant "has as much swelling as I have ever seen in a carpal tunnel area. . . . The swelling is· so much this morning that I have taken pictures to document this[.]" When appellant had reached maximum healing and Dr. Still released her to return to work, he wrote:

> Obviously, she is not going to be able to do anything as far as repetitive work is concerned and I doubt seriously if she is going

to be able to do anything that has anything of substance such as heavy lifting, etc.

Appellant urges us to reverse the Commission's conclusion. Appellant contends that expecting a sixty-eight-year-old woman with a tenth-grade education and serious medical problems to find a job in the service sector in a small town like Waldron, Arkansas, is unrealistic.

On appeal in workers' compensation cases, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings and will affirm if those findings are supported by substantial evidence. *Morelock v. Kearney Co.*, 48 Ark. App. 227, 894 S.W.2d 603 (1995). Substantial evidence means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *College Club Dairy v. Carr*, 25 Ark. App. 215, 756 S.W.2d 128 (1988). The issue on appeal is not whether we might have reached a different result or whether the evidence would have supported a contrary finding; if reasonable minds could reach the Commission's conclusion, we must affirm its decision. *Bearden Lumber Co. v. Bond*, 7 Ark. App. 65, 644 S.W.2d 321 (1983). Where a claim is denied because the claimant has failed to show entitlement to compensation by a preponderance of the evidence, the substantial evidence standard of review requires us to affirm the Commission if its opinion displays a substantial basis for the denial of the relief sought. *Jeter v. B.R. McGinty Mechanical*, 62 Ark. App. 53, 968 S.W.2d 645 (1998); *Linthicum v. Mar-Bax Shirt Co.*, 23 Ark. App. 26, 741 S.W.2d 275 (1987).

Permanent and total disability is awarded when an employee is unable, because of compensable injury or occupational disease, to earn any meaningful wages in the same or other employment. Ark. Code Ann. § 11-9-519(e)(1) (Repl. 1996). Appellant has experience as a clerk in a clothing store and working for a florist making and delivering flower arrangements. Considering appellant's medical restrictions for her back and hand injuries (no repetitive bending, stooping, lifting, and no lifting greater than thirty pounds) it seems that both her previous jobs would fit into these restrictions. Appellant described her typical day:

> I get up of a morning and I go down at my cousin's cafe and I eat breakfast and I am usually down there until the mail runs, and I go to the post office, and I come back home, and by that time, well, "Matlock" is on; I watch him. And then I watch "The Price is Right," and then [I] . . . get in the car and I go drive around town and sometimes I go to Wal-Mart, go in there and look around, and by that time it's lunchtime, and I eat lunch, and I go back down and do the same thing over in town, and then I come home and if there's a good program on, I watch it, and then I have to get up and have to go back down town.

If appellant can tolerate driving various places in town, she could deliver flowers. Working in a dress shop would also appear to be within appellant's restrictions. Furthermore, appellant testified that when told that Tyson had no job for her within her restrictions, she mentioned at least one job she thought she could do, but it was already filled. Thus, there is a substantial basis in the record to support the Commission's finding that appellant was not permanently and totally disabled. We affirm on direct appeal.

The Second Injury Fund argues on cross-appeal that the Commission erred as a matter of law when it awarded appellant permanent partial disability benefits on a scheduled injury. Although on first reading, the Commission's reasoning sounds quite logical, after analysis under the well-settled guidelines of statutory construction, we find we cannot agree. The Commission said:

> We certainly agree that Section 521(g) [Ark. Code Ann. § 11-9-521 (Supp. 1997)] and the *Risper* [*Fed. Compress & Warehouse Co. v. Risper*, 55 Ark. App. 300, 935 S.W.2d 279 (1996)] decision stand for the proposition that a respondent-employer and a respondent-carrier (Respondent No. 1 in this case) cannot be liable for an award of wage loss for a scheduled injury absent a finding of permanent and total disability. However, *Risper* was *not* a Second Injury Fund case, and we interpret Second Injury Fund liability to be controlled by Ark. Code Ann. § 11-9-525, and *not* by Ark. Code Ann. § 11-9-521.
>
> . . .
>
> Likewise, we see no rationale for limiting Second Injury Fund liability, in cases involving scheduled injuries, only to those cases resulting in permanent and total disability. In this regard,

the underlying rationale for a schedule of benefits, such as Ark. Code Ann. § 11-9-521, is to compensate the injured worker for the permanent degree of loss or disuse provided for by statute. Included in that schedule of benefits is a conclusively presumed award of wage loss statutorily assigned to that particular scheduled injury. However, Second Injury Fund cases under Ark. Code Ann. § 11-9-525(b)(3), *by definition*, involve two or more injuries which *combine* to cause a *greater degree* of disability than the degree of disability attributable to each particular injury considered separately. Therefore, we believe that the General Assembly intended for the Second Injury Fund to have potential liability under Section 525(b)(3) in cases involving scheduled injuries causing less than permanent and total disability, even though an employer's liability for permanent disability benefits for scheduled injuries is limited under Section 521(g) to the schedule in Section 521, unless the injury causes permanent and total disability. In our opinion, Section 521 and Section 525 were enacted to address distinctly different situations, and we do not agree with the Second Injury Fund's assertion that Section 521(g) is a bar to Second Injury Fund liability in this case.

(Emphasis in the original; some citations omitted.)

Arkansas Code Annotated section 11-9-521 (Supp. 1997) provides in pertinent sections:

> (a) An employee who sustains a permanent compensable injury scheduled in this section shall receive, in addition to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first, weekly benefits in the amount of the permanent partial disability rate attributable to the injury, for that period of time set out in the following schedule:
>
> . . . .
>
> (g) Any employee suffering a scheduled injury shall not be entitled to permanent partial disability benefits in excess of the percentage of permanent physical impairment set forth above except as otherwise provided in § 11-9-519(b).

Arkansas Code Annotated section 11-9-519(b) states, "In the absence of clear and convincing proof to the contrary, the loss of both hands, both arms, both legs, both eyes, or of any two (2) thereof shall constitute permanent total disability."

■ ■ In *Lawhon Farm Serv. v. Brown*, 335 Ark. 272, 984 S.W.2d 1 (1998), the Arkansas Supreme Court explained:

> We construe a statute just as it reads, giving the words their ordinary and usually accepted meaning in common language. *Vanderpool v. Fidelity & Casualty Ins. Co.*, 327 Ark. 407, 415, 939 S.W.2d 280 (1997); *Bill Fitts Auto Sales, Inc. v. Daniels*, 325 Ark. 51, 55, 922 S.W.2d 718, 720 (1996). . . . In construing any statute, we place it beside other statutes relevant to the subject matter in question and ascribe meaning and effect to be derived from the whole. *Hercules, Inc. v. Pledger*, 319 Ark. 702, 706, 894 S.W.2d 576, 578 (1995).

> Strict construction means narrow construction. *Arkansas Conf. Seventh Day Adventists v. Benton Cty. Bd. of Equalization*, 304 Ark. 95, 800 S.W.2d 426 (1990). In *Thomas v. State*, 315 Ark. 79, 864 S.W.2d 835 (1993), we wrote that strict construction requires that nothing be taken as intended that is not clearly expressed. The doctrine of strict construction is to use the plain meaning of the language employed. *Holaday v. Fraker*, 323 Ark. 522, 915 S.W.2d 280 (1996). Even when statutes are to be strictly construed, however, they must be construed in their entirety, harmonizing each subsection where possible. *Min-Ark Pallet Co. v. Lindsey*, 58 Ark. App. 309, 950 S.W.2d 468 (1997).

335 Ark. at 278-79, 984 S.W.2d at 4. Statutes relating to the same subject should be read in a harmonious manner, if possible. *Minnesota Mining & Mfg. v. Baker*, 337 Ark. 94, 989 S.W.2d 151 (1999); *Mecco Seed Co. v. London*, 47 Ark. App. 121, 886 S.W.2d 882 (1994).

■ Arkansas Code Annotated section 11-9-521 is not ambiguous. The title of section 521 is "Compensation for disability — Scheduled permanent injuries," and subsections (a) and (g) state: "An *employee* who sustains a permanent compensable injury. . ." and, "Any *employee* suffering a scheduled injury *shall not be entitled to* permanent partial disability benefits in excess of the percentage of permanent physical impairment set forth above except as otherwise provided in § 11-9-519(b)." Nowhere in the section is there any reference to the party who is to be responsible for *paying* the disability compensation to the claimant. The entire section is directed toward *claimants* and the amount of compensation to which a *claimant* is entitled.

■ ■ Further, while section 525 does mandate when Second Injury Fund liability may arise, it is not the only portion of the Workers' Compensation Law that applies to the Second Injury Fund. The purpose of the Second Injury Fund is to pay a portion of the obligation of the employer in accordance with the Workers' Compensation Act, and benefits both the employer and its insurance carrier. *Ward v. Fayetteville City Hospital*, 28 Ark. App. 73, 770 S.W.2d 668 (1989). *See also Second Injury Fund v. Mid-State Const. Co.*, 16 Ark. App. 169, 698 S.W.2d 804 (1985). Since Ark. Code Ann. § 521(g) exempts the employer from paying any wage-loss disability for a scheduled injury in the absence of permanent total disability, as the Commission admits, it also exempts the Second Injury Fund. A claimant who is not entitled to wage-loss disability benefits from his employer or its insurance carrier cannot be entitled to benefits from the Second Injury Fund.

■ When we consider the workers' compensation statute as a whole, and read Ark. Code Ann. §§ 11-9-521 and 525 harmoniously with each other and with the entire workers' compensation law, it is clear that the Legislature meant for the claimant's recovery to be restricted to the appropriate scheduled amount, regardless of whether the respondent is an employer, insurance carrier, or the Second Injury Fund.

Case law addressing scheduled injuries supports our finding that a claimant who has sustained a scheduled injury but is less than permanently, totally disabled is not entitled to wage-loss disability benefits. *Fed. Compress & Wholesale v. Risper*, 55 Ark. App. 300, 935 S.W.2d 279 (1996), involved an eye injury. It was not clear from the Commission's opinion that it had not considered the claimant's eye injury when determining the amount of wage-loss benefits to which he was entitled. We pointed out that an eye injury was a scheduled injury, which should not have been considered when determining claimant's wage-loss benefits. We reversed and remanded for the Commission to determine the extent of the claimant's wage-loss benefits without giving any consideration whatsoever to his scheduled eye injury or his non-compensable lumbar injury, which may also have been considered to some extent by the Commission.

In *Ward, supra,* we held that a claimant who has settled his claim with the employer cannot then proceed against the Second Injury Fund. In other words, we held that the statute controlled the *claimant's entitlement* to compensation, rather than the *source* of the compensation.

For these reasons we reverse the Commission's order that the Second Injury Fund is liable for wage-loss benefits to the claimant and hold that the claimant is not entitled to wage-loss benefits in addition to the compensation she received for her scheduled injury.

Affirmed on direct appeal; reversed on cross-appeal.

NEAL and CRABTREE, JJ., agree.