FARMERS COOPERATIVE *v.* Sidney BILES

CA 01-797                                         69 S.W.3d 899

Court of Appeals of Arkansas
Divisions III and IV
Opinion delivered March 20, 2002

*Hart & Wren, LLP*, by: *Neal L. Hart*, for appellant.

No response.

JOHN MAUZY PITTMAN, Judge. The appellee in this workers' compensation case was employed by appellant. His duties required him to load and unload trucks. While so engaged on approximately January 29, 2000, appellee tripped, fell from the loading dock into a truck tailgate, and injured his leg. Appellee promptly reported his injury to his supervisor, who treated his laceration. Appellee's leg became increasingly swollen and painful over the next few days, but appellant refused to provide the medical treatment that appellee requested. Appellee, who had no medical insurance, could not afford to pay for the treatment that he required. Appellee continued working, with difficulty, until he was terminated by appellant on June 23, 2000. Approximately one week after his termination, appellee consulted an attorney and was directed to a physician who would treat him without requiring immediate payment. Appellee filed a claim for medical and temporary total disability benefits, asserting that he sustained a compensable injury to his left knee while in appellant's employ. After a hearing, the Commission found that appellee suffered a compensable leg injury while employed by appellant; that appellant was responsible for all reasonable and necessary medical treatment provided in connection with that injury; and that appellee was entitled to temporary total disability benefits beginning June 24, 2000, and continuing through a date yet to be determined. From that decision, comes this appeal.

For reversal, appellant contends that the Commission's award of temporary total disability benefits is not supported by substantial evidence and ignores the legislature's mandate that the Workers' Compensation Act be strictly construed. We affirm.

■ ■ Our standard of review is well-settled: In determining the sufficiency of the evidence to support the findings of the Workers' Compensation Commission, we view the evidence and all reasonable inferences deducible therefrom in the light most favorable to the Commission's findings, and we will affirm if those findings are supported by substantial evidence. Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. The determination of the

credibility and weight to be given a witness's testimony is within the sole province of the Commission. The Commission is not required to believe the testimony of the claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *American Greetings Corp. v. Garey*, 61 Ark. App. 18, 963 S.W.2d 613 (1998).

■ ■ Appellant asserts that the evidence is not substantial because appellee's physician did not state that appellee was in a "healing period." We find this argument to be disingenuous. Temporary total disability is that period within the healing period in which an employee suffers a total incapacity to earn wages; the healing period is that period for healing of an accidental injury that continues until the employee is as far restored as the permanent character of his injury will permit, and that ends when the underlying condition causing the disability has become stable and nothing in the way of treatment will improve that condition. *Carroll General Hospital v. Green*, 54 Ark. App. 102, 923 S.W.2d 878 (1996). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id*. Here, although it is true that appellee's physician did not use the precise term of art "healing period," he did state that he was going to give appellee several weeks to work on improving his range of motion, and that if appellee's injury had not improved, appellee would require arthroscopic surgery. This, clearly, is substantial evidence that appellee is within his healing period.

■ ■ Appellant also argues that the evidence is not substantial because the Commission ignored the fact that there are no "off-work" slips in the record, and ignored "credible" evidence that appellee had performed various types of labor on his farm after he was fired. We do not agree. These are matters of weight and credibility, and thus lie within the exclusive province of the Commission. *American Greetings Corp. v. Garey, supra*. Although it is true that appellee testified that he performed some isolated farm and household tasks following his injury, appellee's testimony, which the Commission found to be credible, was that he was in pain, that he required help to perform his farm chores, and that he did so slowly and with difficulty. Such activity is not a bar

to an award of temporary total disability benefits. If, during the period while the body is healing, the employee is unable to perform remunerative labor with reasonable consistency and without pain and discomfort, his temporary disability is deemed total. *Pyles v. Triple F. Feeds of Texas*, 270 Ark. 729, 606 S.W.2d 146 (Ark. App. 1980).

Finally, appellant contends that the Commission erred by failing to strictly construe Ark. Code Ann. § 11-9-521(a) (Repl. 1996), which provides that employees who sustain scheduled injuries shall receive temporary disability benefits "during the healing period or until the employee returns to work, whichever occurs first." Appellant argues that, because appellee returned to work after his injury, he is barred from receiving temporary total disability benefits for the period following his termination by appellant. We do not agree. Although it is true that the Workers' Compensation Act must be strictly construed, Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996), even a strict construction of statutes requires that they be construed in their entirety, with each subsection relating to the same subject to be read in a harmonious manner. *Maxey v. Tyson Foods, Inc.*, 66 Ark. App. 301, 991 S.W.2d 624 (1999). Furthermore, construction of the Workers' Compensation Act must be done in light of the express purpose of that legislation, which is "to pay timely temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force." Ark. Code Ann. §11-9-101(b) (Repl. 1996). In light of the legislative purpose, it would be ludicrous to assume that the legislature sought to penalize workers who sustain scheduled injuries, or to deter such workers from making a good-faith effort to return to the work force following such an injury. Section 11-9-521(a)'s brief reference to temporary disability benefits merely establishes the right of a worker who has sustained a scheduled injury to such benefits, and was clearly not intended to bar additional temporary total disability benefits following an unsuccessful attempt to return to the workforce. *See Roberson v. Waste Management*, 58 Ark. App. 11, 944 S.W.2d 858 (1997).

"Return to work" is not defined by the Act, and we think it would be a gross perversion of the purpose of the Workers' Compensation Act to hold that appellee "returned to work" pursuant to § 11-9-521(a) by continuing to report to work following his injury. In our view, appellee never left work. Appellee could not leave work — without being terminated for absenteeism — until he had been evaluated by a physician and given an off-work slip. Appellee requested medical care and evaluation, but appellant refused to provide it. No reasonable construction of the term "return to work" would permit an employer to coerce an injured worker to abandon his claim to temporary disability benefits by denying him reasonable and necessary medical treatment for an admittedly compensable injury.[1]

Affirmed.

BIRD, BAKER, and ROBBINS, JJ., agree.

NEAL, J., concurs.

ROAF, J., dissents.

---

[1] As the dissent notes, *Wheeler Construction Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001), recites the statutory language that an employee suffering a scheduled injury is entitled to compensation for temporary total and temporary partial benefits during the healing period or until the employee returns to work, whichever occurs first. However, *Wheeler* says nothing about what constitutes a return to work, or whether a worker who returns to work unsuccessfully regains entitlement to temporary benefits during a second period of rehabilitation following an injury, and as such is simply not relevant to the very different circumstances that arise in the present case. It is ludicrous to suggest that we are carrying out the legislature's intent by affirming an award of benefits to Mr. Armstrong, who did not return to work simply because he was imprisoned, and reversing an award of benefits to the appellant in the present case, who requested but was refused the basic medical evaluation and treatment that would have permitted him to leave work without endangering his livelihood. Furthermore, while it is true that additional temporary benefits were ultimately denied in *Roberson v. Waste Management, supra*, that denial was based on the particular facts of the case. Insofar as the issue in the *Roberson* case was entitlement to additional temporary benefits following a return to work, and that the denial of those benefits was not grounded on a holding that such benefits are unavailable *per se*, but instead on a finding that Ms. Roberson's subsequent medical problems were not work-related, that case strongly suggests that additional temporary benefits are, in fact, available in a proper case following an unsuccessful attempt to return to the workplace.

Olly Neal, Judge, concurring. I concur in affirming this case. However, I write separately because the Commission and appellant have cited *Wheeler Construction Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001), and I feel an analysis consistent with *Wheeler* is necessary for a fair resolution of the issue. *Wheeler* provides that where an employee suffers a scheduled injury, he may receive temporary total or temporary partial disability benefits if he establishes (1) that he is still in his healing period, or (2) he has failed to return to work, whichever occurs first.

Here, appellant does not dispute whether the appellee has suffered a scheduled injury. The healing period is that period for healing of an injury which continues until the claimant is as far restored as the permanent character of the injury will permit. *Wentz v. Service Master*, 75 Ark. App. 296, 57 S.W.3d 753 (2001). The determination of when the healing period has ended is a factual determination for the Commission, which is affirmed on appeal if supported by substantial evidence. *Emerson Electric v. Gaston*, 75 Ark. App. 232, 58 S.W.3d 848 (2001). Dr. Duke Harris noted that if appellee's range of motion did not improve, appellee would require arthroscopic surgery. Furthermore, appellee testified that he's "limping all the time and can't bend [his] knee." Therefore, I agree with the majority's holding that there was substantial evidence that appellee was still in his healing period.

Having shown that he was still in his healing period, appellee must next show that he has not returned to work. Appellee testified that he continued to work after his accident. Upon injuring his leg, appellee reported his injury to the plant manager; and the manager's remedy was to simply put iodine on the injury. Appellee testified that in the days following his accident his leg "kept getting stiffer and stiffer." As his leg worsened, appellee informed his superior. He stated that on one occasion his superior complained that he was not working fast enough, and that he responded "I can't go any faster . . . . My knee, I can't walk hardly." His superior responded that they might have to send him to the doctor. Thus, appellee continued to work despite his injury because his employer failed to provide him reasonable and neces-

sary medical treatment. The majority holds, and I agree, that "no reasonable construction of the term 'return to work' would permit an employer to coerce an injured worker to abandon his claim to temporary disability benefits by denying him reasonable and necessary medical treatment for an admittedly compensable injury."

Appellee also testified that since his accident, he has performed several tasks around his farm. In order to perform these tasks, appellee had to work slower than his normal pace and required the assistance of a neighbor. The Commission found that this did not constitute a return to work, and I agree. Moreover, I agree that if while in his healing period an employee is unable to perform remunerative labor without pain or discomfort, then he is temporarily totally disabled. *See Pyles v. Triple F. Feeds of Texas Inc.*, 270 Ark. 729, 606 S.W.2d 146 (Ark. App. 1980). I believe there was substantial evidence to support a finding that appellee had not returned to work; thus, the requirements of *Wheeler* were satisfied.

ANDREE LAYTON ROAF, Judge, dissenting. I would reverse this case. The issue before us involves only the award of temporary total disability (TTD) benefits for a scheduled leg injury that occurred in 2000. While it is undisputed that appellee Sidney Biles suffered a compensable injury, I do not believe he has met the standard set forth in *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001), where a "scheduled" injury is involved, the case specifically relied on by both the Commission and by appellant in its argument for reversal. *Wheeler* provides that entitlement to TTD benefits continues as long as the claimant is within his healing period, or he has not returned to work, *whichever first occurs*. Here, Biles 1) returned to work after his injury; 2) continued to work for six months until he was apparently terminated by Farmers Cooperative (as reflected in the ALJ's opinion) for "alleged misconduct" (as recited in the Commission's opinion),[1] and 3) was fully performing his job prior

---

[1] There is no evidence in appellant's abstract concerning the termination or the reasons for it other than Biles's cryptic testimony, "They never told me I was fired. They just told me to go file my papers, and I left."

to his termination. However, in *Wheeler*, the claimant never returned to work at all before he was terminated for having become incarcerated; he "returned" to the workforce nine months later when he began working in the prison as a sewing machine operator. Wheeler's case was thus reversed for an award of TTD benefits during those nine months. In Biles's case, while he is clearly entitled to further medical treatment, *Wheeler* does not support the finding by the Commission that he is entitled to TTD benefits. Biles surely did not experience an "unsuccessful attempt to return to the workforce," as asserted in the majority opinion; neither did the claimant in *Roberson v. Waste Management*, 58 Ark. App. 11, 944 S.W.2d 858 (1997), the case the majority cites for this proposition. The Commission denied TTD benefits to Roberson because her healing period had ended, and this court affirmed. I do not take issue with the Commission's finding in the instant case that Biles remained in his healing period; it is their finding that Biles "has yet to return to work" that is not supported by the evidence in this case.

Moreover, the majority and concurring judges apparently worry that denying TTD benefits to an employee who continues working despite a failure to receive medical treatment for a compensable injury will somehow encourage employers to withhold medical treatment in order to "coerce" an employee to abandon a potential TTD claim. However, the fact remains that Biles did work continuously after his injury. By the strained interpretation of "returned to work" adopted by the majority, it is employers who should now be fearful of initially contesting the compensability of an employee's injury, as they will be obligated for additional, oftentimes undeserved TTD benefits where the employee continues to work, because there is no requirement that the employee demonstrate through medical evidence that he would have or should have been kept off work for a time. Certainly, Biles, who had the burden of establishing entitlement to TTD benefits, could have sought such an opinion from his physician.

As a final matter, although the parties and the Commission have treated Biles's leg injury as a scheduled injury throughout these proceedings, it is unclear from our workers' compensation statutory scheme when a mere injury to a limb is to be treated as a

scheduled injury. Arkansas Code Annotated §§ 11-9-521(b)(2)(e) and (f) provide that scheduled-injury benefits, absent an amputation, may be awarded only for "*permanent* total loss of use of a member" or "*permanent* partial loss of use of a member," and it remains to be seen at this early stage of Biles's treatment whether he will be awarded a permanent rating. With a scheduled injury, the claimant need not demonstrate that he is actually incapacitated from earning wages to receive TTD benefits. However, this is not an issue raised by appellant. In any event, Biles continued to work for six months after his injury, first saw a doctor six days after his termination, and, according to his physician's notes, his condition was "much better" one month later. I would reverse.