Juan GARCIA *v.* A&M ROOFING

CA 04-530 202 S.W.3d 532

Court of Appeals of Arkansas
Opinion delivered February 2, 2005

*The Buchanan Firm, P.A.*, by: *Eric Spencer Buchanan*, for appellant.

*Matthews, Sanders & Sayes*, by: *Doralee Chandler* and *Gail Matthews*, for appellee.

SAM BIRD, Judge. On April 12, 2002, appellant Juan Garcia fell to the pavement while he was working for his brother Pablo Garcia on a roofing job at the residence of a Mr. Driggers. Appellant subsequently underwent surgery and physical therapy for serious injuries to his left leg and wrist, and he did not return to work. Appellee A&M Roofing denied appellant's claim for workers' compensation benefits. Following a hearing, the administrative law judge granted appellant's claim, awarding medical and temporary total disability benefits. The Workers' Compensation Commission reversed the award, rejecting appellant's contention that his employer, Pablo Garcia, was a subcontractor of A&M. We agree with appellant's contention on appeal that he was an employee of an uninsured subcontractor of A&M and that appellant is entitled to recover workers' compensation benefits from A&M. The decision of the Commission is reversed, and the case is remanded for an award of benefits.

Where a subcontractor fails to secure compensation required by the Workers' Compensation Act, the prime contractor shall be liable for compensation of the employees of the subcontractor. Ark. Code Ann. § 11-9-402(a) (Repl. 2002). In the present case, the Commission made the following findings and conclusions regarding the parties' employment relationships:

> [W]e find that the claimant has failed to prove by a preponderance of the evidence that he was an employee of an uninsured contractor, but the employee of an independent contractor. Therefore, the claimant is not entitled to any benefits from the respondent.
>
> . . . .
>
> The claimant was working for Pablo at the time he sustained his injuries. The claimant now contends that he was an employee of the subcontractor, Pablo, of the prime contractor A&M Roofing. A review of the evidence indicates that Pablo was an independent contractor. Therefore, there is no liability on the part of the respondent for the injuries sustained by the claimant.

We hold that, under Ark. Code Ann. § 11-9-402(a), the Commission erred in concluding that A&M had no liability for workers' compensation benefits to appellant.

Testimony at the hearing was given by appellant; appellant's nephew Pedro Garcia; A&M's owner, Harold Mills; and appellant's brother Jesse Garcia.[1] It was not disputed that Mills was in the business of selling roofing materials, contracting roofing jobs, and paying for the services of roofers to perform those contracts. It is also undisputed that Jesse was in the roofing business and that Jesse was one of six contractors whom Mills regularly used to do the roofing jobs.

Appellant testified that he knew Mills was the employer because Mills sometimes checked out the jobs where appellant was working. Appellant said that on April 12, 2002, he was working for Mills on Driggers's house, where he was making $100 a day. He said that on April 12 Mills came out to the job site where appellant was working.

Describing the accident, appellant said that he tried to pull some shingles out and slipped and fell down, straight to the ground. Appellant stated that Mills came to see him two weeks after he left the hospital and appellant asked Mills for some help, but that Mills declined. Appellant said that his brother Jesse gave him $800 for food. Appellant testified that Mills had never given him cash or a check and had never called him to come work on a

---

[1] Jesse's given name is Jesus but he was most often referred to in the record, and is referred to in this opinion, as Jesse.

job; he said that Jesse, not his brother Pablo, had called him to come to work on the day that he was hurt.

Pedro Garcia testified that he was appellant's nephew and that he had been an employee of Mills a long time ago. Pedro testified that he telephoned Mills after the accident at appellant's request, and that Mills responded that he would not help appellant.

Harold Mills testified that he was the owner of A&M Roofing and that he had known both Jesse and appellant for about eight years. Mills denied that appellant worked for him, that appellant ever received money from him, and that he ever told appellant that he was Mills's employee. Mills testified that he was in the roofing business and that he sells roofing jobs to independent contractors who do the work. Mills stated that he had an "Agreement of Independent Labor Contract" with each of his independent contractors. The written agreement required A&M to pay independent contractors $32 for one layer and $38 for two layers, and it required the independent contractors to provide their own tools, to remove all debris and clean the grounds, to pay all taxes and social security contributions, to carry workmen's compensation insurance or have a workmen's compensation waiver, and to be responsible for damage to customers' property and carry liability insurance. Mills said that he had six independent contractors, one of whom was Jesse. He said that the contractors furnished their own tools and decided the hours they were going to work.

Regarding the Driggers job, Mills stipulated that he furnished all roofing materials for the job and that he "contracted to do it." He testified that he "contracted this job . . . to Jesse," but did not know who worked on it or know that Jesse had turned the job over to Pablo. Mills stated that he did not know how much he paid Jesse for the job because Jesse was paid "by the square" on Saturday mornings, with one check for the total number of squares he had done that week, sometimes covering several jobs. Mills denied that he actually had a contract with Driggers or tried to determine the job's progress. Mills explained why he went to the job site on the date of appellant's accident: "I was not monitoring my employees. Mr. Driggers said that they were stuck in the yard, and I had a four-wheel drive. He wanted me to pull them out and fix the yard." Mills stated that he was not on site when the accident occurred.

Jesse Garcia testified that he did "a lot of jobs" for Mills and had contracted with Mills to do the Driggers roofing job. Jesse said that he had signed the independent labor contract with Mills "a

long time ago" and that it applied to all of Jesse's jobs. He stated that sometimes Mills told him how to do a job when it involved "special things," but that most of the time he knew what to do. He testified that Mills told him when there was a job "out there" to be done and where it was, and that he would go and do the job. He stated that Mills decided when Jesse was going to do the job, but that Mills did not tell him what hours to work. He said that Mills paid him every Saturday by the square for jobs performed during the week.

Jesse testified that he contracted with Mills to do the roofing for the Driggers job and then turned the job over to his brother Pablo, who had called looking for work. Jesse testified that Mills did not know that Jesse turned the job over to Pablo. Jesse stated that he did not remember what he paid Pablo, but it was about $30 to $36 a square. He stated, "I took only $100 from the job to pay for my fuel, and I gave the rest to Pablo." Jesse stated that he had not given appellant any money after his injury because appellant was working for Pablo, but that Jesse and his father had later bought appellant a car. Jesse said that he had never known appellant to do any work on one of Mills's jobs.

### Prime Contractor and Subcontractor

Appellant contends that, as an employee of Pablo Garcia, a subcontractor of the prime contractor A&M, he was entitled to recover workers' compensation benefits for his injuries from A&M under Ark. Code Ann. § 11-9-402. A&M responds that Mills is, in essence, "a broker for home owners whose sole purpose is to locate an independent contractor to perform roofing work." A&M contends that Mills's and Jesse's relationship was "an independent contractor relationship" relieving Mills of any responsibility for Jesse's employees, for any subcontractors, or for employees of any subcontractors retained by Jesse. A&M argues that under the independent contractor agreement, Mills did not control a job once Jesse purchased a contract, and that Jesse was an independent contractor responsible and liable for the job until he passed it to another independent contractor or completed the work. Finally, A&M asserts that it is clearly against public policy to hold A&M liable for actions taken by the independent contractor (Jesse) when Mills had no knowledge of the contractor's actions or ability to control the actions.

In *Hale v. Mansfield Lbr. Co.*, 237 Ark. 854, 855, 376 S.W.2d 670, 670-71 (1964), where Hale was one of the workmen remov-

ing timber from government land in performance of Mansfield's contract with the government, the supreme court stated, "Even if it can be said that Hale was an independent contractor, he was an independent subcontractor, and Mansfield would be liable to his employees under the workmen's compensation law." In *Bailey v. Simmons*, 6 Ark. App. 193, 639 S.W.2d 526 (1982), we affirmed the Commission's ruling under Ark. Stat. Ann. § 81-1306, the predecessor to Ark. Code Ann. § 11-9-402, that before an independent contractor could be found to be a subcontractor, it must first be established that the one sought to be held liable as prime contractor was contractually obligated to a third person for the work being performed by the independent contractor. The *Bailey* court, recognizing "a considerable difference between a subcontractor and an independent contractor," defined subcontractor in part as follows:

> A subcontractor is one who enters into a contract with a person for the performance of work which another has already contracted to perform. In other words, subcontracting is merely "farming out" to others all or part of work contracted to be performed by the original contractor.

6 Ark. App. at 196, 639 S.W. 2d at 528 (citation omitted).

█ In the present case, Mills testified that he "secured" the job on which appellant was injured, that he contracted the job to Jesse, and that he paid Jesse for it. This established that A&M was contractually obligated to a third person (Driggers) for the work being performed and that Jesse was a subcontractor of A&M, the prime contractor. Jesse's testimony that he gave the job to Pablo established that Pablo was also a subcontractor of A&M. That Jesse and Pablo may have been independent contractors for A&M did not preclude their also being subcontractors of A&M for purposes of Ark. Code Ann. § 11-9-402. Because appellant was an employee of Pablo, an uninsured subcontractor of A&M, A&M was the prime contractor statutorily liable for workers' compensation benefits to appellant.

█ A&M's assertion that it was a mere broker that would "sell" the roofing contracts to independent contractors and bear no further responsibility for completion of the roofing job is simply not borne out by any evidence. Specifically, there was no evidence that the so-called independent contractors paid A&M anything for the privilege of doing the roofing job. Rather, it is

undisputed that A&M would procure the roofing job with the site owner, post the job on a board where it could be selected by one of its roofing contractors, and provide directions as to the location of the job and when the job was to be done. Furthermore, in accordance with the so-called "Agreement of Independent Labor Contract," A&M would pay its contractors on a weekly basis according to the number of squares and layers of roofing that the roofer had installed during the preceding week. The fact that the roofer provided his tools, selected his working hours, and was required by the prime contractor to carry various types of insurance and to discharge his tax liabilities, is not controlling as to whether the contractor is a subcontractor within the meaning of Ark. Code Ann. § 11-9-402(a), even though he may be an independent contractor for some purposes.

As for A&M's argument that it is against public policy to hold it liable for the actions taken by an independent contractor, we disagree. As we have already stated, the fact that Pablo may have been an independent contractor for some purposes does not preclude a determination that he was also a subcontractor within the meaning of Ark. Code Ann. § 11-9-402. Furthermore, under that statute it is clearly the public policy of this state that prime contractors are liable for workers' compensation benefits to the employees of uninsured subcontractors. On the facts of the case now before us, we hold that there is no evidence to support the conclusion of the Commission that Jesse's status as an independent contractor precludes a determination that Jesse was also a subcontractor, and that A&M was a prime contractor within the meaning of Ark. Code Ann. § 11-9-402(a).

### Certificates of Noncoverage

A sole proprietor or partner of a partnership who desires not to be included in the definition of "employee" for workers' compensation purposes may file for and receive a certificate of noncoverage from the Commission. Ark. Code Ann. § 11-9-102(9)(B) (Repl. 2002). Here, certificates of noncoverage for Jesse and Pablo Garcia were entered into evidence, as was a document reporting that a sole proprietor's noncoverage certificate for appellant existed for dates that included the day he was injured.

A&M relies upon the following portion of Ark. Code Ann. § 11-9-402 (Repl. 2002), which is entitled *Liability of prime contractors and subcontractors — Sole proprietorships or partnerships*:

(a) Where a subcontractor fails to secure compensation required by the Act, the prime contractor shall be liable for compensation of the employees of the subcontractor.

. . . .

(B)(i) A sole proprietor or the partners of a partnership who do not elect to be covered by this chapter and be deemed employees thereunder and who deliver to the prime contractor a current certification of noncoverage issued by the Workers' Compensation Commission shall be conclusively presumed not to be covered by the law or to be employees of the prime contractor during the term of his or her certification or any renewals thereof.

(ii) This provision shall not affect the rights or coverage of any employees of the sole proprietor or of the partnership.

It is clear that the purpose of subsection (B)(i) is to permit a sole proprietor or partner(s) to elect to exempt himself or herself from entitlement to the benefits of workers' compensation insurance while continuing to provide workers' compensation benefits to the employees of the sole proprietorship or partnership; and to provide that when a sole proprietor or partner delivers his or her certificate of noncoverage to the prime contractor, such sole proprietor or partner is conclusively presumed not to be covered by workers' compensation or to be an employee of the prime contractor. Subsection (B)(ii) makes it equally. clear that the acquisition and delivery of a certificate of noncoverage by a sole proprietor or partner to a prime contractor affects only the rights of the sole proprietor or partner, and "shall not affect the rights or coverage of any employees of the sole proprietor or of the partnership." Clearly, the delivery by a sole proprietor or partner of a certificate of noncoverage to a prime contractor does not have the effect of relieving the prime contractor from liability for workers' compensation benefits to the employees of the sole proprietor or partnership where such sole proprietor or partnership is an uninsured subcontractor of the prime contractor.

Applying Ark. Code Ann. § 11-9-402 to this case, it appears from the evidence that both Jesse and Pablo Garcia, as sole proprietors of their respective roofing businesses, had at some time prior to appellant's injury delivered their certificates of noncoverage to A&M. Jesse and Pablo thereby exempted themselves, but

not their employees, from the benefits of workers' compensation coverage while under contract with A&M. While it also appears from the evidence that appellant had also obtained from the Commission for himself a certificate of noncoverage, there is no evidence that at the time of his injury he was functioning in the status as a sole proprietor or partner under contract with A&M, or that appellant's certificate of noncoverage had ever been delivered to A&M. To the contrary, the Commission found that appellant was working for Pablo at the time appellant was injured; and according to the testimony of Jesse Garcia, at the time of his injury appellant was an employee of Pablo Garcia. Furthermore, there was no evidence that appellant's certificate of noncoverage had ever been delivered to A&M, and Mills testified that appellant had never worked for A&M.

At the hearing before the administrative law judge, Mills's defense to appellant's claim for workers' compensation was that "there was a valid certificate of noncoverage." Mills testified that Jesse "has always given me a certificate of noncoverage during all the time he has worked for me," and that A&M contracted with him to perform roofing jobs only after he obtained his waiver as sole proprietor pursuant to statute. Jesse testified that he always had a certificate of noncoverage. Jesse further testified that he told Pablo that Mills did not let anyone do the jobs if they did not have a noncoverage certificate, and that Pablo responded that he had one.

A&M now asserts that appellant elected to be excluded from coverage by obtaining his noncoverage certificate, which created a conclusive presumption under Ark. Code Ann. § 11-9-402 that he was not covered by workers' compensation law. Strict construction of section 11-9-402, however, as is required by Ark. Code Ann. § 11-9-704(c)(3) (Repl. 1996), compels a result different from the one advanced by A&M. Construction of the workers' compensation statutes must be made in light of the express purpose of that legislation, "to pay timely temporary and permanent disability benefits to all legitimately injured workers who suffer an injury or disease arising out of and in the course of their employment, to pay reasonable and necessary medical expenses resulting therefrom, and then to return the worker to the work force." Ark. Code Ann. § 11-9-101(b) (Repl. 1996); *Farmers Coop. v. Biles*, 77 Ark. App. 1, 69 S.W.3d 899 (2002).

The waiver of an employee's right to compensation is specifically addressed by Ark. Code Ann. § 11-9-108(a) (Repl. 2002):

> No agreement by an employee to waive his or her right to compensation shall be valid, and no contract, regulation, or device whatsoever shall operate to relieve the employer or carrier, in whole or in part, from any liability created by this chapter, except as specifically provided elsewhere in this chapter.

We cannot interpret section 11-9-402 to mean that employees can waive their rights to compensation by obtaining certificates of noncoverage, or in a manner that enables a prime contractor to avoid its statutory obligation to provide workers' compensation coverage to employees of uninsured subcontractors. We previously have interpreted the primary purpose of Ark. Stat. Ann. § 81-1306 (Repl. 1976), the predecessor to the statute currently at issue, as being "to protect the employees of subcontractors who are not financially responsible, and to prevent employers from relieving themselves from liability by doing through independent contractors what they would otherwise do through direct employees." *Liggett Const. Co. v. Griffin*, 4 Ark. App. 247, 251, 629 S.W.2d 316, 318 (1982).

As stated earlier in this opinion, we agree with appellant's contention that he was an employee of Pablo Garcia, who was a subcontractor of A&M Roofing. Jesse's and Pablo's presentation to A&M of their certifications of noncoverage created the conclusive presumption under Ark. Code Ann. § 11-9-402(c)(1)(B)(i) that they were not to be covered by the law or to be employees of A&M, the prime contractor. Under the clear language of subsection 11-9-402(c)(1)(B)(ii), however, that presumption did not extend to employees of the subcontractors of A&M. There is no evidence that appellant presented a certificate of noncoverage to A&M. Appellant's status as an employee of an uninsured subcontractor brings him within the protection of section 11-9-402(a), and A&M is liable for workers' compensation benefits related to the injuries he sustained on the roofing job.

Reversed and remanded for an award of benefits.

GRIFFEN and BAKER, JJ., agree.