2013 Ark. App. 172

**Johnnie FOSTER, Appellant**

v.

**TYSON POULTRY, INC., Appellee.**

No. CA 12–932.

Court of Appeals of Arkansas.

March 13, 2013.

564

George Bailey, for appellant.

Roberts Law Firm, P.A., Little Rock, by: Jeremy Swearingen and Emily A. Neal, for appellee.

ROBERT J. GLADWIN, Chief Judge.

Appellant Johnnie Foster appeals from the September 4, 2012 opinion of the Arkansas Workers' Compensation Commission that affirmed and adopted the June 19, 2012 opinion of the Administrative Law Judge (ALJ) and found that she failed to prove by a preponderance of the evidence her entitlement to additional temporary-total-disability benefits (TTD), or to all related unpaid medical expenses and unpaid medically related travel expenses incurred with the University of Arkansas for Medical Sciences (UAMS). She argues that the Commission erred in finding that she did not meet her burden of proof and that the findings are contrary to law and not supported by substantial evidence. We affirm.

Appellant is a fifty-year-old woman who began working for appellee Tyson Poultry, Inc., in 1987. She worked there for six: years and then worked with other employers until she returned to appellee in April 2008. She worked on an assembly line where she was a shoulder cutter, cutting approximately thirty-six chickens per minute. It is undisputed that appellant sustained a compensable injury on or about September 23, 2008, specifically, a gradual-onset injury in the form of a repetitive-strain injury resulting in carpal tunnel syndrome and other related conditions.

Dr. David Rhodes performed a trigger-finger release to appellant's thumb on November 4, 2009, and on December 2, 2009, median-nerve decompression surgery on her left upper extremity, Minimal TTD was paid, as appellant continued to work on lighter duty, primarily still on the line.

On January 6, 2010, Dr. Rhodes reported that appellant would reach maximum

medical improvement (MMI) for carpal tunnel syndrome on February 3, 2010, with a ten-pound weight limit for the left upper extremity, On February 3, 2010, however, upon observation of swelling, Dr. Rhodes re-initiated treatment by way of oral steroids and steroid injections. subsequently, Dr. Rhodes reported the need to rule out reflex: sympathetic dystrophy (RSD) and referred appellant to Dr. Annette Meador.

Appellant ceased working on July 27, 2010, but it is disputed whether she abandoned her employment at that time. On August 6, 2010, Dr. Meador reported that RSD had resolved, appellant had reached MMI, and she had zero-percent impairment. Appellant had no medical treatment other than through her family physician for approximately eight months, with no treatment for the RSD, recurring carpal tunnel syndrome, or swelling and related pain. Appellant was terminated on November 29, 2010, on grounds of noncompliance with Family Medical Leave Act procedures required by appellee.

On March 29, 2011, appellant presented to the emergency room at UAMS. From there, she was treated in the departments of orthopedics, neurosurgery, and rehabilitative medicine. Appellant was diagnosed with severe focal neuropathy of the left median nerve on April 20, 2011, diagnosed with de Quervain Tenosynovitis and recurrent carpal tunnel syndrome on August 8, 2011, and was ordered for physical/occupational therapy for three weeks as late as November 3, 2011.

During the course of treatment at UAMS, on August 2, 2011, appellant gave written notice to appellee that she was in need of additional medical treatment. Appellee did not pay any additional benefits, claiming that the treatment was not performed by an authorized physician, and it is undisputed that appellant has not exercised her one-time change of physician, despite prompting by appellee.

The ALJ denied all benefits that were at issue, and the Commission affirmed and adopted the opinion of the ALJ by a two-to-one decision. This appeal followed.

■■■ In an appeal from the Commission, this court must determine whether the Commission's decision was supported by substantial evidence by viewing the evidence and all reasonable inferences in the light most favorable to the Commission's findings. *Poulan Weed Eater v. Marshall,* 79 Ark.App. 129, 84 S.W.3d 878 (2002). "Substantial evidence" has been defined as relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Cooper v. Hiland Dairy,* 69 Ark.App. 200, 11 S.W.3d 5 (2000). This court may not reverse the Commission simply because it concludes that a different result was possible, that it would have reached a different conclusion if it were the trier of fact or heard the case de novo, or that the evidence would have supported a contrary finding. *Freeman v. Con–Agra Frozen Foods,* 344 Ark. 296, 303, 40 S.W.3d 760, 766 (2001). Instead, the Commission's decision must be affirmed if the court concludes that reasonable minds could reach the Commission's decision, however, if the court is convinced that fair-minded persons with the same facts before them could not have reached the Commission's conclusion, it may reverse. *Id.*

I. *Denial of Additional TTD from July 29, 2010, to a Time Yet to be Determined*

■■■ A claimant who suffers a scheduled injury is entitled to TTD during his healing period or until he returns to work. Ark.Code Ann. § 11–9–521(a) (Repl.2012); *Wheeler Constr. Co. v. Armstrong,* 73 Ark. App. 146, 41 S.W.3d 822 (2001). The heal-

ing period is defined as that period for healing the injury, which continues until appellant is as far restored as the permanent nature of the injury will allow. *Searcy Indus. Laundry, Inc. v. Ferren,* 92 Ark.App. 65, 211 S.W.3d 11 (2005). The determination of when the healing period has ended is a factual determination for the Commission and will be affirmed on appeal if supported by substantial evidence. *Id.;* Ark.Code Ann. § 11–9–521(a). *See also Poulan, supra.* In addition, the claimant's "failure to return to work must be causally related to the injury." *Fendley v. Pea Ridge Sch. Dist.,* 97 Ark.App. 214, 216–17, 245 S.W.3d 676, 677–78 (2006).

Appellant submits that a claimant who returns to work, light duty or full duty, but does not continue to work because of termination, or physical inability to continue, is not necessarily precluded from further TTD simply because Arkansas Lode Annotated section 11–9–521(a) contains a provision stating that one of the ways TTD ends is when a claimant returns to work. *Tyson Poultry, Inc. v. Narvaiz,* 2012 Ark. 118, 388 S.W.3d 16; *Am. Railcar Indus. Inc. v. Gramling,* 2010 Ark. App. 625, 2010 WL 3686561; *Superior Indus. v. Thomaston,* 72 Ark.App. 7, 32 S.W.3d 52 (2000). Further, she urges that *Wheeler,* cited in the ALJ opinion that was adopted by the Commission, does not stand for the proposition that TTD and the healing period necessarily end when a claimant returns to work.

■ Appellant challenges the Commission's finding, in effect, that the August 6, 2010 report of MMI in Dr. Meador's records is determinative, because a determination of MMI for appellant at that point conflicted with the overwhelming evidence to the contrary. We disagree and hold that the record supports the Commission's finding that appellant was not entitled to TTD benefits. The Commission is not re-

quired to believe the testimony of a claimant or any other witness, but may accept and translate into findings of fact only those portions of the testimony it deems worthy of belief. *See McMillan v. U.S. Motors,* 59 Ark.App. 85, 953 S.W.2d 907 (1997). These matters of weight and credibility lie within the exclusive province of the Commission. *Poulan, supra.*

The Commission relied on the records of Drs. Rhodes and Meador indicating that appellee reached MMI by August 6, 2010. The evidence below does not support that appellant was still in a healing period two years after her original compensable injuries or that she had reentered a healing period. By August 6, 2010, she had been released from care by her authorized providers, and her continued complaints were too diffuse and unsupported by corroborating clinical findings to suggest otherwise. By the time appellant later sought unauthorized treatment at UAMS, her residual symptoms on the left side were ultimately attributed to de Quervain's Tenosynovitis, which her psychiatrist, Dr. William Doss, said could not be pinpointed to a particular cause and it would be difficult to say what could have caused it, given that appellant had not even been working for appellee for over a year by that point.

Appellant's own testimony supports the Commission's finding that she had reached the end of her healing period for her left upper extremity when she was released by Dr. Mead or on August 6, 2010. She testified that the unauthorized UAMS treatment did not improve significantly her symptoms because the doctor waited too long before he started treatment. She acknowledged that despite surgery, steroid injections in her arm two years ago, thirteen nerve-block, injections in her neck, physical therapy, and medication, nothing had improved her symptoms and that she

was not sure what was next in terms of medical care.

Additionally, the evidence in the record supports the Commission's finding that appellant abandoned her light-duty employment with appellee for reasons unrelated to her compensable hand injuries. Accordingly, the Commission's decision that she is not entitled to additional TTD is not contrary to the evidence or to Arkansas law. Appellant argues that her employment was terminated because she could not return to the light-duty work that appellee had made available to her, however, the finding of the State of Arkansas Department of Workforce Services, which she did not appeal or challenge, was that appellant left her work with appellee on November 29, 2010, "voluntarily without good cause connected with the work." As such, substantial factual evidence supports the decision of the Commission, and we hold that no error occurred from the denial of additional TTD.

II. *Denial of Medical Expenses Incurred at UAMS after August 2, 2011*

The ALJ found, and the Commission affirmed, that none of appellant's treatment at UAMS was compensable because appellant was not referred to UAMS by one of her authorized physicians, and she did not apply for a change of physician pursuant to the applicable rules in Arkansas Code Annotated section 11–9–514 (Repl.2012). It is undisputed that appellant elected to reserve her one-time right to change of physician to a later phase of the proceedings.

Section 11–9–514(b) of the statute provides, "Treatment or services furnished or prescribed by any physician other than the ones selected according to the foregoing, except emergency treatment, shall be at the Appellant's expense." Notwithstanding, appellant relies on section 11–9–514(f) which provides.

(f)When compensability is controverted, subsection (b) of this section shall not apply if:

(1) The employee requests medical assistance in writing prior to seeking the same as a result of an alleged compensable injury,

(2) The employer refuses to refer the employee to a medical provider within forty-eight (48) hours after a written request as provided above,

(3) The alleged injury is later found to be a compensable injury, and

(4) The employer has not made a previous offer of medical treatment.

Appellant maintains that subsection (f) applies because, upon obtaining proof that she continued to suffer from the compensable injury, appellant gave written notice pursuant to subsection (f)(1). She maintains that the notice was accompanied by attached medical records stating the diagnosis and plans for treatment, including Dr. Pramod Nelluri's recommendations, but appellee elected not to provide alternative treatment or the treatment recommended by the physicians at UAMS.

Contrary to appellant's argument, the provisions of section 11–9–514(f) were not met in this case. Appellant and her counsel have acknowledged appellant's ongoing right to utilize her one-time change of physician, but she has refused to exercise that right. Evidence indicates that appellee consistently has maintained that it would not challenge the valid exercise of the right to a one-time change of physician, but that it expected appellant not to seek unauthorized care in the meantime. There is no evidence to support that appellant made a claim for any specific medical benefit with any of her authorized doctors. We note that *Lepel v. St. Vincent Health Services,* 96 Ark.App. 330, 241 S.W.3d 784

(2006), cited by appellant, actually supports the Commission's findings. This court, in *Lepel* affirmed the Commission's finding that a claimant's treatment with a neurosurgeon was unauthorized, because the claimant similarly failed to apply for a change of physician pursuant to section 11–9–514, and therefore, workers' compensation benefits were not warranted under the facts. We hold that likewise in the instant case the Commission properly denied compensation for appellant's treatment obtained at UAMS.

Affirmed.

WYNNE and HIXSON, JJ., agree.