ROBERT J. GLADWIN, Judge
Shuronda Davis appeals the Arkansas Workers' Compensation Commission's (Commission's) October 23, 2017 opinion that reversed the administrative law judge's (ALJ's) decision and found that Davis did not prove she had sustained compensable injuries other than those to her right arm and left knee. On appeal, Davis argues that the Commission erred in finding that (1) she had reached the end of her healing period for her left knee, and (2) she did not sustain injuries to her low back and both thumbs. We affirm.
I. Facts
Davis, who worked for Remington Arms Company (Remington), slipped and fell on her hands and knees when she was at work on April 22, 2016. Remington paid medical benefits for treatment of Davis's compensable injuries to her right arm and left knee. When Davis later claimed injuries to her thumbs and lumbar spine from the fall, Remington controverted those claims.
At a hearing to determine the compensability of the alleged thumb and back injuries, the end date of Davis's healing period, and entitlement to temporary total-disability benefits (TTD) and additional medical treatment, Davis testified that she had worked for Remington for twenty-two years, most recently as a primer charger, dealing with explosives. She said that on April 22, 2016, she met in the front of the department with other workers to do hand exercises for carpal-tunnel and tendinitis prevention. After she finished those exercises, she walked to the trash can. Davis said,
That is when I slipped and fell on something greasy and oily on the floor. When I proceeded to fall, I put my hands out to try to catch myself, but I ended up landing on my hands and on my knees and then going backward. I was on concrete. It was just a flat surface. I hurt my hands and my knees when I fell. I did not know that my back was hurt until the next morning when I woke up because I could not move.
Davis said that the accident occurred on a Friday, and she did not work the remainder *897 of the day. She was taken to Concentra in North Little Rock where Dr. Moore performed x-rays. She was sent back to work but stayed only an hour after having informed her supervisor that she was hurting and needed to go home. Because there was no nurse on site on Saturday, she reported to the nurse on Monday morning that she woke on Saturday with back pain and could not get out of bed. The nurse told her to go back to Concentra. Despite Davis's testimony that she went to Concentra and was told that an appointment had not been arranged and she could not be seen, Concentra's records from that day indicate that Davis reported new back pain during her examination.
Davis said that she went on Tuesday to her primary-care physician (PCP), Dr. Norman Pledger, who prescribed physical therapy. She said that her hands and knees were swollen and bruised and that she was also experiencing back pain at that time. She denied experiencing any problems with her back before April 22, 2016.
Davis said that after she completed physical therapy, she went back to her PCP, and he sent her to OrthoArkansas for treatment of her back and knee. That doctor sent her for more physical therapy. She said that after several weeks the therapy had not helped, so an MRI was ordered.
Davis testified that she had not worked since the April 22 fall because she was unable to stand longer than ten minutes and had constant pain in her back and knees. She also said that her thumb "situation" had not resolved. Davis had surgery on one thumb in October but had not had any surgery on her knees because she needed to lose weight first. She said she had been paying for the medical treatment and still owed for some of it. She said that she had applied for Social Security disability but that the claim was still pending and that she had not tried to go back to work. She said that she needed additional medical treatment for her knee, back, and left hand.
Davis said that after Dr. Moore had released her back to work, she talked to the Remington nurse about her back pain. She said that the nurse informed her that because she did not report an injury to her back when the accident first happened, it would not be included in the accident report and would not be part of her workers'-compensation claim. She was told that because Dr. Moore had released her back to work the day of the accident, Remington would not be liable for any more payments or doctors' appointments. She said that she then sought treatment on her own.
Davis said that Dr. Blankenship had been the primary doctor for her back. She said that her low back had not improved since the accident. She said that Dr. Blankenship had ordered the MRI and talked to her about the degenerative changes or arthritis that it revealed. Dr. Blankenship also looked at her left knee, and he ordered an MRI for it as well. She said that he did not talk to her about arthritis, that he counseled her on weight loss, and he told her she needed to lose weight before surgery on her knee could be done. She also said Dr. Blankenship referred her to Dr. Sims, who told her she needed a total-knee replacement, that she needed to lose weight before it was done, and that she had severe knee arthritis along with a weight issue.
Davis said that she saw Dr. Norton in August 2016 for her thumbs, and he performed bilateral injections in both thumbs and a release on her right wrist, which had improved, and Dr. Norton "is going to do the left." She admitted that she had a history of problems with her hand and *898 wrist in the form of carpal-tunnel releases that had been performed "years ago." She also said that Dr. Shock had given her injections in her right elbow in the past.
The ALJ found as follows:
Unfortunately, the disputes in this claim revolve around the fact that many of [Davis's] subsequent complaints, need for treatment, and disability did not manifest themselves immediately; however, clearly, [her] undisputed testimony, which is confirmed by medical records reflect that [her] multiple symptoms manifested themselves shortly thereafter, were logically attributable to the admitted slip and fall on April 22, 2016, and are attributable to the incident. Further, the record reflects that [Remington], specifically, the company nurse, frustrated [Davis's] efforts at obtaining any and all follow-up medical care while relying upon a one-time examination by the company physician at Concentra Health Centers who released [Davis] to return to work without restrictions despite the fact that [she] voiced additional complaints which were subsequently confirmed by medical evidence supported by objective findings. Again, [Davis] was the only lay witness to testify. [Davis's] credible testimony is undisputed. Her credible testimony is corroborated by medical evidence.
....
Regarding the claim of back injury, rather than conduct a further analysis of the medical evidence, suffice it to say that, in my opinion, [Davis] has failed to prove a back injury supported by objective medical findings to warrant the award of medical or indemnity benefits.
....
Again, respondents have frustrated [Davis's] ability to obtain follow-up medical treatment. [Davis's] undisputed testimony reflects that she remains within her healing period related to her left knee injury. [Davis] requires further treatment for her admitted left knee injury, as well as surgery related to her DeQuervain's injury. Accordingly, [Davis] has proven, by a preponderance of the evidence, that she is entitled to [TTD] for her work-related injuries.
The ALJ awarded TTD beginning April 23, 2016, and continuing until Davis's healing period was determined to have ended. Davis was also awarded all outstanding hospital, medical, and related expenses for her left-knee and bilateral-upper-extremity injuries, continued, reasonably necessary medical treatment, and attorney's fees.
Remington appealed the award to the Commission, and Davis cross-appealed the ALJ's finding that she had failed to prove an injury to her lumbar spine on April 22, 2016. The Commission relied on Dr. Moore's report that on the day of the accident Davis complained of right-elbow pain and left-knee pain after a fall and that "no other injuries [were] reported." In the follow-up appointment on Monday, April 25, 2016, it was noted that Davis continued to complain of right-elbow pain and left-knee pain but also reported a new symptom, "low back pain." The Commission also notes the April 26, 2016 assessment by her PCP that Davis reported "1. Acute bilateral low back pain without sciatica." The Commission found, "The record does not show that this assessment of acute low back pain was causally related to the April 22, 2016 compensable injury." The Commission continued,
The evidence before the Commission does not demonstrate that [Davis] sustained compensable injuries to any anatomic area except for the stipulated compensable injuries to [her] right arm (including elbow) and left knee. To the extent that [Davis] contends she sustained compensable injuries to any region *899 except the right arm and left knee, the Full Commission finds that [Davis] was not a credible witness. The record does not show that [Davis] injured her right wrist/thumb or left wrist/thumb when she fell on April 22, 2016.
Nor does the evidence show that [Davis] sustained a compensable injury to her back on April 22, 2016. We reiterate the treating medical provider's report on April 22, 2016, that "no other injuries" were reported that date except for the compensable injuries to [Davis's] right arm (elbow) and left knee. The evidence does not demonstrate that the abnormalities shown on the July 6, 2016 MRI of [Davis's] lumbar spine were causally related to the April 22, 2016 stipulated accidental injury.
The parties stipulated that [Davis] sustained compensable injuries to her right arm and left knee on April 22, 2016. The Full Commission finds that [Davis] did not prove by a preponderance of the evidence that she sustained compensable injuries to her right hand/thumb/wrist, left hand/thumb/wrist, or back. [Davis] did not prove that she sustained an accidental injury causing internal or external physical harm to her right hand/thumb/wrist, left hand/thumb/ wrist, or back. [Davis] did not sustain an injury to these areas which arose out of and in the course of employment on April 22, 2016, required medical services, or resulted in disability. [Davis] did not prove that she sustained an injury to these anatomic regions which was caused by a specific incident or was identifiable by time and place of occurrence.
The Commission further held that because Davis failed to prove she had sustained compensable injuries to her bilateral thumbs or wrists, she was not entitled to additional medical treatment. Further, although Davis was entitled to the treatment she had received for her right arm and left knee, she was not entitled to TTD based on Dr. Moore's opinion that she had reached maximum medical improvement (MMI) on April 25, 2016. The Commission concluded,
The Full Commission recognizes that a radial tear has been shown in [Davis's] left knee, and that a treating physician has opined that [Davis] "will need a knee replacement if she can get her weight down." The evidence does not demonstrate, however, that a knee replacement has been scheduled or is currently recommended. We find that [Davis's] ultimate need for knee replacement surgery does not extend [her] healing period beyond April 25, 2016, when Dr. Moore assessed [MMI] and released [Davis] to return to work. [Davis] testified that she was unable to return to work because of "My back." The Full Commission has affirmed the [ALJ's] finding that [Davis] did not prove she sustained a compensable back injury.
The Commission noted that there was not "currently a recommendation for surgery to [Davis's] left knee." Davis appeals, arguing that the Commission erred in finding that she had reached the end of her healing period relative to her left-knee injury and in finding that she did not sustain injuries to her low back and both thumbs.
II. Standard of Review
We must view the evidence in the light most favorable to the Commission's decision and affirm the decision if it is supported by substantial evidence. Nat'l Transit Staffing, Inc. v. Norris , 2018 Ark. App. 229, 547 S.W.3d 730. Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion. Id. The issue is not whether this court might have reached a different result from the Commission but whether *900 reasonable minds could reach the Commission's result. Id. Questions concerning the credibility of witnesses and the weight to be given to their testimony are decided by the Commission. Id. Further,
[w]e have held that "[w]here there are contradictions in the evidence, it is within the Commission's province to reconcile conflicting evidence and to determine the true facts." Templeton v. Dollar Gen. Store , 2014 Ark. App. 248, at 7, 434 S.W.3d 417, 421. The Commission is not required to believe the testimony of the claimant or any other witness but may accept and translate into fact only those portions of the testimony that it deems worthy of belief. Long v. Wal-Mart Stores, Inc. , 98 Ark. App. 70, 250 S.W.3d 263 (2007). Moreover, a claimant's testimony is deemed controverted as a matter of law. See Flynn v. J.B. Hunt Transp. , 2012 Ark. App. 111, 389 S.W.3d 67. Further, the Commission may reject a doctor's opinion as to causation that is based on a history from the claimant that the Commission has determined is not credible. See Roberts v. Whirlpool , 102 Ark. App. 284, 289, 284 S.W.3d 100, 103 (2008).
Hargis v. Lovett , 2018 Ark. App. 227, at 8, 547 S.W.3d 724, 729. Finally, we will not reverse the Commission's decision unless we are convinced that fair-minded persons, with the same facts before them, could not have reached the Commission's conclusions. Nat'l Transit, supra.
III. TTD
Under Arkansas law, to receive TTD the claimant must prove by a preponderance of the evidence that he or she is within the healing period and is totally incapacitated from earning wages. Nat'l Transit, supra. The Commission determines, as a matter of fact, when the healing period has ended. Its decision will be affirmed on appeal if supported by substantial evidence. Id.
[TTD] is determined by the extent to which a compensable injury has affected the claimant's ability to earn a livelihood. An injured employee is entitled to [TTD] when he is totally incapacitated from earning wages and remains in his healing period. Jordan v. Home Depot, Inc. , 2013 Ark. App. 572, at 3, 430 S.W.3d 136, 138. The "healing period" is defined as the period necessary for the healing of an injury resulting from an accident. Ark. Code Ann. § 11-9-102(12). The healing period continues until the employee is as far restored as the permanent character of his injury will permit. Myers v. City of Rockport , 2015 Ark. App. 710, 479 S.W.3d 33, reh'g denied (Jan. 20, 2016). When the underlying condition that caused the disability becomes stable and when nothing further will improve that condition, the healing period has ended. Mad Butcher, Inc. v. Parker , 4 Ark. App. 124, 628 S.W.2d 582 (1982).
Marten Transp., Ltd. v. Morgan , 2017 Ark. App. 608, at 6-7, 532 S.W.3d 139, 143-44.
Davis argues that when Remington refused to provide further medical treatment, she was forced to seek it on her own. The MRI of her left knee on July 6, 2016, reflected a radial tear at the posterior horn/root junction with extrusion of the medial meniscus. Davis requires surgery for her left knee, but it has not been performed because of her excessive weight. She argues that an employee who has suffered a scheduled injury is to receive TTD during the healing period or until he returns to work. Ark. Code Ann. § 11-9-521(a) (Repl. 2012); Wheeler Constr. Co. v. Armstrong , 73 Ark. App. 146, 41 S.W.3d 822 (2001). The healing period is that period for healing of the injury that *901 continues until the employee is as far restored as the permanent character of the injury will permit. Nix v. Wilson World Hotel , 46 Ark. App. 303, 879 S.W.2d 457 (1994). If the underlying condition that caused the disability has become more stable and if nothing further in the way of treatment will improve that condition, the healing period has ended. Id.
Davis contends that despite the Commission's recognition that a radial tear has been shown in her left knee, the Commission denied TTD because a knee replacement has not been scheduled or currently recommended. She also claims that it is "uncontroverted" that she cannot work because of her left-knee injury. She argues that the Commission ignores that she is unable to obtain the needed knee replacement because she cannot pay for it herself and has no insurance. She also contends that her weight being the cause of the extension of her healing period does not relieve Remington of responsibility. She claims that because Remington has frustrated her ability to obtain follow-up medical treatment, she remains within her healing period for her knee injury as well as her DeQuervain's injury related to her left wrist.
The Commission reasoned as follows in its ultimate finding that Davis had proved that all the medical treatment of record that had been provided in connection with the compensable injuries to her right arm and left knee was reasonably necessary in accordance with Ark. Code Ann. § 11-9-508(a) :
[T]he parties stipulated that [Davis] sustained a compensable injury to her left knee on April 22, 2016. An x-ray of [Davis's] left knee on April 22, 2016 showed a "small joint effusion." A physician reported "Internal derangement of left knee" on April 26, 2016. There was no evidence of internal derangement of [Davis's] left knee prior to the April 22, 2016 compensable injury. An MRI of [Davis's] left knee on July 6, 2016 showed, among other things, a radial tear in the medial meniscus. There was no record of this abnormality prior to the April 22, 2016 compensable injury.
Regarding TTD, the Commission found:
[Davis] did not prove she was entitled to [TTD], in accordance with Ark. Code Ann. § 11-9-501(a) (Repl. 2012).
The Full Commission recognizes that a radial tear has been shown in [Davis's] left knee, and that a treating physician has opined that [Davis] "will need a knee replacement if she can get her weight down." The evidence does not demonstrate, however, that a knee replacement has been scheduled or is currently recommended. We find that [Davis's] ultimate need for knee replacement surgery does not extend [her] healing period beyond April 25, 2016, when Dr. Moore assessed [MMI] and released [Davis] to return to work. [Davis] testified that she was unable to return to work because of "My back." The Full Commission has affirmed the [ALJ's] finding that [Davis] did not prove she sustained a compensable back injury.
Based on our de novo review of the entire record, the Full Commission finds that [Davis] did not prove by a preponderance of the evidence that she sustained "multiple injuries." [Davis] did not prove that she sustained any compensable injuries other than the stipulated compensable injuries to [her] right arm (elbow) and left knee. [Davis] proved that the medical treatment of record provided for her right arm and left knee was reasonably necessary in accordance with Ark. Code Ann. § 11-9-508(a) (Repl. 2012). [Davis] was not bound by the change of physician rules *902 until she was provided the Form AR-N on November 1, 2016. Based on the record currently before us, [Davis] did not prove her healing period continued beyond April 25, 2016, when Dr. Moore assessed maximum medical improvement. There is not currently a recommendation for surgery to [her] left knee.
Remington argues that substantial evidence supports the Commission's finding that Davis was not entitled to TTD. We agree. Davis was determined to have reached MMI on April 25, 2016, for injuries to her right elbow and left knee. Davis failed to prove any other compensable injury, and she is not entitled to TTD for any injuries other than those that are compensable. The Commission determines when the healing period has ended, and its decision will be affirmed if supported by substantial evidence. Foster v. Tyson Poultry, Inc. , 2013 Ark. App. 172, 426 S.W.3d 563. Additionally, a claimant's failure to return to work must be causally related to the injury. Id.
Remington points to Dr. Moore's evaluation, placing Davis at MMI and releasing her to return to work. Remington emphasizes that the multiple other providers that Davis saw did not find that Davis was unable to return to work. Remington also notes Dr. Blankenship's diagnosis of severe left-knee arthritis and his MRI reading that her left knee showed degenerative changes and a degenerative meniscal tear of the medial meniscus. Remington contends that the Commission considered and determined that Davis's condition was gradual and degenerative. Finally, Remington points to Davis's own testimony that established that her noncompensable back injury was the reason she could not return to work. Thus, Davis's failure to return to work was not causally related to the fall on April 22, 2016, see Foster , supra , and the Commission properly found that Davis is not entitled to TTD.
IV. Injuries Outside of Stipulated Knee and Arm Injuries
To prove a compensable injury as a result of a specific incident that is identifiable by time and place of occurrence, the claimant must establish by a preponderance of the evidence (1) an injury arising out of and in the course of employment; (2) that the injury caused internal or external harm to the body that required medical services or resulted in disability or death; (3) medical evidence supported by objective findings, as defined in Ark. Code Ann. § 11-9-102(16) (Repl. 2012), establishing the injury; and (4) that the injury was caused by a specific incident identifiable by time and place of occurrence. Ark. Code Ann. § 11-9-102(4)(A)(i).
Yates v. Boar's Head Provisions Co., Inc. , 2017 Ark. App. 133, at 4-5, 514 S.W.3d 514, 516-17.
Davis argues that the Commission erred in finding that she did not sustain compensable injuries to her low back and both thumbs in the April 22, 2016 fall. Davis testified that she fell on her hands and knees on concrete and that she reported the back pain on Monday following the Friday accident. The Remington nurse sent her back to Concentra, and Dr. Moore noted that she presented with "new complaints" of back pain on Monday. She was told by the Remington nurse that because the back pain had not been reported on the day of the accident, her back would not be included in the workers'-compensation claim.
Davis contends that she sought treatment on her own for her left-knee pain, bilateral-wrist and thumb pain, and low-back pain. She testified that she reported all this pain to her PCP on Tuesday following *903 the Friday accident. She was sent to an orthopedist, Dr. Shock, whose examination of her hands and wrists reflected mild swelling at the scaphoid and the snuffbox. An x-ray showed "possible lucency at the waist of the scaphoid." Her diagnosis included bilateral DeQuervain related to her wrists. The MRI of her back revealed "mild central spinal canal stenosis present in the L3-4 and L4-5 levels due to bulging of the disc, fact arthropathy, and thickening of the ligamentum flavum. The MRI of her left knee revealed a radial tear involving the posterior horn/root junction of the medial meniscus with possible degenerative maceration of the posterior horn. "Mild bone contusion is seen on either side of the medial compartment." Finally, x-rays of both thumbs revealed advanced degenerative arthritis.
Davis argues that the injuries, in addition to those stipulated, are also causally connected to her work accident. She claims that the injuries she complained of are congruent with the fall as she described. She contends that the objective findings of bulging discs prove her back injury, and she testified that she was not having back pain before the accident. Davis attributes her inability to return to work to her back. She argues that these injuries required medical services, including corticosteroid injections of her bilateral wrists and surgery on her right wrist. She underwent physical therapy for her back pain. Thus, she contends that substantial evidence does not support the Commission's conclusion that her injuries were limited to her left knee and right arm.
The Commission denied any medical treatment for Davis's lower back, wrists, and thumbs. The Commission relied heavily on Davis's treatment record at Concentra on April 22, 2016, which noted that she complained of "Right Elbow Pain and Left Knee Pain after a fall," and "No Other Injuries Reported." At Davis's follow-up appointment on April 25, 2016, it was "noted that [Davis] continued to complain of right elbow pain and left knee pain but also that [she] reported a new symptom, 'Low Back Pain.' " The Commission recited the medical records related to those areas as set forth in Davis's argument above, then found as follows:
The evidence before the Commission does not demonstrate that [Davis] sustained compensable injuries to any anatomic area except for the stipulated compensable injuries to [her] right arm (including elbow) and left knee. To the extent that [Davis] contends she sustained compensable injuries to any region except the right arm and left knee, the Full Commission finds that [Davis] was not a credible witness. The record does not show that [Davis] injured her right wrist/thumb or left wrist/thumb when she fell on April 22, 2016.
Nor does the evidence show that [Davis] sustained a compensable injury to her back on April 22, 2016. We reiterate the treating medical provider's report on April 22, 2016 that "no other injuries" were reported that date except for the compensable injuries to [Davis's] right arm (elbow) and left knee. The evidence does not demonstrate that the abnormalities shown on the July 6, 2016 MRI of [Davis's] lumbar spine were causally related to the April 22, 2016 stipulated accidental injury.
The parties stipulated that [Davis] sustained compensable injuries to her right arm and left knee on April 22, 2016. The Full Commission finds that [Davis] did not prove by a preponderance of the evidence that she sustained compensable injuries to her right hand/thumb/wrist, left hand/thumb/wrist, or back. [Davis] did not prove that she sustained an accidental injury causing *904 internal or external physical harm to her right hand/thumb/wrist, left hand/thumb/ wrist, or back. [Davis] did not sustain an injury to these areas which arose out of and in the course of employment on April 22, 2016, required medical services, or resulted in disability. [Davis] did not prove that she sustained an injury to these anatomic regions which was caused by a specific incident or was identifiable by time and place of occurrence.
Remington contends that substantial evidence supports the Commission's finding that Davis failed to prove by a preponderance of the evidence that she sustained any compensable injuries other than the stipulated compensable injuries to her right arm and left knee. We agree with this contention. The evidence was that Davis did not report injuries to her hands, wrists, or thumbs during her treatment with Dr. Moore on April 22 and 25, 2016. Further, Dr. Blankenship's MRI of Davis's lumbar spine showed chronic degenerative problems with no reference to an acute injury, and x-rays of her thumbs revealed degenerative arthritis. Based on this evidence and the Commission's province of determining facts and credibility, we affirm the Commission's determination. See Yates , supra ; Hargis, supra.
Affirmed.
Klappenbach and Brown, JJ., agree.